DEN EX DEM. OSBORNE ET AL. *vs.* TUNIS AND WHITE.

1. If the plaintiff in ejectment does not offer evidence of title sufficient to put the defendant upon his defence, he cannot be prejudiced by any erroneous ruling of the court in regard to such defence, and cannot therefore, upon a writ of error, avail himself of such erroneous ruling as a ground for reversal.

2. But if the defects in the plaintiff's evidence be such as might have been supplied upon the trial, had the objection been there made and sustained, or if it does not clearly appear from the bill of exceptions that the plaintiff cannot be prejudiced by the erroneous ruling of the court in regard to the defence, the plaintiff is entitled to avail himself of such errors as a ground for reversal.

3. Upon a decree of foreclosure of a mortgage in fee on a bill filed by the executor of the mortgagee, the legal title to the mortgaged premises is in the heir at law of the mortgagee, and not in the executor.

4. And though the decree directs that the possession of the premises shall be surrendered, and the title papers delivered to the executor, the legal title remains in the heir at law.

5. While the mortgage retains its character of a mere pledge or security for the mortgage debt, it is regarded as a chattel interest, and under the control of the executor, but when the equity of redemption is foreclosed, its character as a pledge ceases and the title to the mortgaged premises vests absolutely in the heir at law of the mortgagee.

6. Equity will permit the executor to follow the land into the hands of the

heir so far as to satisfy the mortgage debt, but he cannot convey the legal title. The foreclosure fixes the title in the heir.

7. If after the decree of foreclosure. at the suit of the executor, the mortgage debt and costs are satisfied in full; the executor is stripped of all equitable interest in the land, and a conveyance by him of the mortgaged premises will not transfer to the grantee even the right of possession.

8. The mortgagor or his alienee, continuing in possession of the mortgaged premises after the decree of foreclosure, and after the satisfaction of the mortgaged debt, will be deemed to continue in possession under his claim of title.

9. The law will not presume that he voluntarily divested himself of a rightful possession, and accepted possession under an instrument totally invalid.

10. A mortgage is competent evidence to show that at the time it was given, the mortgagor was in possession of the mortgaged premises under a claim of title with the knowledge of the mortgagee.

11. Where the mortgagee is claiming title under the mortgage, or seeking to avail himself of any right or claim under it, either to title or possession, he cannot deny the title of the mortgagor. The party, by claiming under the mortgage, admits the mortgagor's title at the time of its execution.

12. But where the party is not claiming under the mortgage, but under an independent and paramount title, the fact of the acceptance and transfer of the mortgage will not estop the mortgagee, or those claiming under him, from showing that independent of the mortgage, he had a valid title.

13. It is error to submit to the consideration of the jury the question, whether a deed was procured by fraud or in trust for a third party, when there is no evidence of fraud in procuring the deed or of the existence of a trust.

14. A corporate deed can be proved only by proving that the seal affixed is the seal of the corporation, or that it was affixed as the corporate seal· by an officer of the corporation or other person thereunto duly authorized.

15. Proof that the individuals whose names are subscribed to the deed sealed and delivered the instrument as their deed, neither proves the seal of the corporation nor their authority to execute the deed.

16. At the common law, signing was not essential to the validity of a deed. Was it rendered necessary by the statute of frauds ? *Query.*

17. The act of May 26, 1786, "for striking and making current £100,000 in bills of credit, to be let out on loan," constitutes the commissioners of the loan office a body politic and corporate, authorizes them,.in certain cases, to execute deeds of conveyance, and directs that they shall to the deed put one seal, as the seal of the loan office, and *sign their names.* The deed was proved by a subscribing witness, who deposed that "he saw J. M. and J. L. seal and deliver the within written deed, as and for their voluntary act and deed," *held,* that the proof was defective.

18. Where a statute requires that a corporate deed shall be signed by the persons executing it, proof that the deed was sealed and delivered by them is not sufficient.

19. The execution of a power· to sell lands by public officers must be in strict pursuance of the power, or no title is conveyed.

20. The performance of the requirements of the statute by public officers in the case of ancient deeds will not be presumed from the mere antiquity of the transaction. There must be some other circumstance to warrant the presumption that the requirements of the statute touching the sale of lands have been complied with.

In error to the Supreme Court.

This was an action of ejectment, brought by Albert H. Osborne and Adeline his wife, and others, in the Supreme Court, for lands described in the consent rule entered into in this cause, as being one tract of land in the township of Morris, and county of Morris, containing fifty-two acres, and the undivided half of two other tracts, containing, the one forty-seven acres, one rood and thirty-seven perches of land, and the other lot containing seventy-six acres of land.

Seneca White was in possession, as tenant, when the suit was brought. He was admitted to defend, as such, and John Tunis, as landlord and owner of the fee.

The cause was tried at the Morris Circuit, May term, 1854, and a verdict rendered for defendant. Final judgment on that verdict was entered in the Supreme Court, November term, 1854. A writ of error was brought removing the case into this court.

On the trial, several exceptions were taken, both on the part of the plaintiffs and defendants; but, as many of the points raised are not decided in this court, it is deemed unnecessary to insert the bill of exceptions.

The errors complained of sufficiently appear in the charge of the judge at the circuit and by the opinion delivered in this court.

On the trial, the judge charged the jury as follows:

This is an action of ejectment, brought to try the title to, and to recover possession of, a part of a farm of about 175 acres, in the township of Morris, in this county.

The defendants, being in the peaceable possession, can-

not be disturbed until the plaintiffs show affirmatively, and to your satisfaction, that at the time the action was commenced, to wit, February term, 1853, he had a title to the premises.

The lessors of the plaintiffs claim, as the children and heirs at law of William Boyle, the whole of a lot of 52 acres, and the undivided half of two lots of 76 and 47 acres, and the question before us is whether they have made sufficient proof of their title.

That William Boyle, who is called Doctor Boyle, died leaving a son, William L. Boyle, and daughters, Anna Maria, the wife of James H. Hutchins, and Adeline, the wife of Albert H. Osborne, is not disputed.

Solomon Boyle, senior, was in possession of the whole premises as early at least as 1786, and continued till the time of his death, which was after 10th May, 1800, when a subpœna in chancery was served upon him.

In 1786, December 6th, he executed a mortgage on the fifty-two acre tract to the commissioners of loans for Morris county, under the act of 26th May, 1786, for striking and making current £100,000 to secure £78. By this act it was provided, that on the nonpayment of the mortgage moneys, the fee of the land mortgaged vested in the commissioners, and they were authorized to sell it in a manner and at a time directed by the act.

There being a balance of the mortgage money, £8 8s. 6d. due, the commissioners, on 5th March, 1799, conveyed the premises, for the consideration of £8 8s. 6d., to Dr. Boyle. This deed was recorded on 7th January, 1802.

There is no proof of the fulfilment of the requisites of the act, as to the manner of sale. But the act gives the form of the deed, in which the advertisement and manner of sale is not recited. And after a lapse of fifty years, the law presumes that those officers, acting on behalf of the state, complied with those requisites.

It would not be reasonable, at this time, to require parol

proof of putting up advertisements, and the sale, &c. The deed is therefore properly in evidence, and *prima facie* conveyed the land to him.

It at least gives color of title, and if William obtained it in good faith, and under it took possession of the lot, believing that he had acquired a good title, and continued in such possession for twenty years, he acquired title to it. But if the deed was not made in good faith, and for the benefit of William; if he got it by fraud, or for the use of some other person for whom he became the trustee, or for any other purpose than for himself; or if he never entered upon the lot, and had the possession of it under that deed, it cannot avail the plaintiffs now.

The consideration expressed in a deed is no evidence of fraud nor of inadequacy of price. It is usual to express only a nominal consideration, even when a full price has been paid. If it be a valuable consideration, it is sufficient, and that can be expressed as well by £8 8s. 6d. or by ten cents as by a larger sum.

You may consider, however, the balance due on the mortgage at the time of sale as the extent of the consideration paid, in connection with other facts, to guide your judgment, and to enable you to determine whether the deed was obtained in good faith, and for his own benefit or not. If there were other encumbrances, or the title of Solomon Boyle, senior, was doubtful, the £8 and expenses may have been the full value of that interest.

On the question of William's taking possession, I need only refer you to the testimony that he was residing there on the farm with his brother at the time, and to what has been said about the division of the partition fences in 1804, in which William was to make a part and Solomon a part.

The act of the township officers, in making division of the fences, cannot affect the title. But it is of importance as evidence of who claimed or possessed at that time. If the colonel was there assenting to it, their act and his

assent was an admission of William's possession. If William made or kept up the fence set off to him, it is evidence of continued possession.

There is also evidence of his having raised corn on the lot. Whether the witness (William Boyle) speaks from his own knowledge or from information, or whether he recollects accurately, you must judge.

There is also evidence of his having furnished hands to work on the farm; whether that was upon this lot, or on some other part of the farm, you must determine. If on this, and for him, it is evidence of possession. But whether the doctor had hands, the negro boys to work there, and whether they worked for him in raising grain, or cultivating the land, or whether he lent or hired them to the colonel, you must gather, if you can, from the evidence of Dr. Doty and Daniel Heath, and the other witnesses who spoke on that subject.

II. To the tracts of 76 and 47 acres, the plaintiffs claim title to the undivided half, through a mortgage made by Solomon Boyle, senior, to William Luce, on all the three tracts, on 6th June, 1791. On 6th May, 1800, William Luce died, leaving a will, by which he gave all his bonds and mortgages to his daughter, the wife of John Buchanan, and appointed Peter Mackie and John Buchanan his executors. These executors filed their bill in chancery, on the 18th November, 1800, obtained a decree of absolute foreclosure of the equity of redemption, by which Solomon Boyle, senior, and his heirs and subsequent grantees were divested of the land mortgaged. Whether the effect of this decree was to invest the executors with the title to the land, or not, is of no consequence now. That question, if necessary, can be better determined elsewhere. The executors, assuming that they had the right to convey the land, on the 1st of December, 1801, conveyed the lots of 47 and 76 acres to Solomon and William Boyle.

I say that the executors conveyed, although but one of

them executed the deed, assuming for the purpose of this issue, that one executor had the power to act for both.

This deed conveyed the property to Solomon and William in equal undivided portions, as tenants in common. And if Solomon permitted William to occupy those lots in common with him, under that conveyance, neither he nor his heirs can now deny the right, nor question the validity of it. And if William has acquired a right, and has done nothing since to divest himself of the title, and the right has not been barred by the statute of limitations, the plaintiffs have the right to recover.

It becomes important, then, for you to inquire—

1*st.* Whether Solomon permitted William to enter upon and occupy those two lots under that conveyance. If so—

2*d.* And whether William has done anything to divest himself of the title so acquired, or whether he and those who claim under him have suffered their right of entry to become barred by the statute of limitations.

1*st.* In showing the occupation by William, it is not necessary to prove that he, in terms or by his express declaration, occupied the undivided half, or as tenant in common. If he occupied the lots claimed in his own right or in virtue of a right conferred by the deed, it is sufficient, and the law will imply that, having a legal right, his occupation was in accordance with it. But the mere fact of his living at the house of his brother on the farm, or of his walking over it, or even speaking of the crops, is not sufficient, for that might have been done by a stranger. But if he was then claiming to be owner, in whole or in part, contributing to the expense or the labor of cultivating it, or to the expense of building or repairing, or partook of the profits, or acting, in short, as an owner of land usually acts, it is evidence of occupation.

Of this you must determine from the testimony. The language he used about the farm; the labor of the negro boys, if any was done; the expense of the frame of the

house, &c.; the effect of the notice to sheriff Wilson, in 1824, directing sale of land belonging to both defendants.

2d. Had William, by an act or omission of his, divested himself of his right? The defendants say, that if he ever had a claim, he became divested by his own acts.

1st. The deed of Joseph Boyle to Solomon Boyle, junior, 29th January, 1800, recorded 14th August, 1801, could not countervail the right acquired under the mortgage of Solomon Boyle, senior. The right, if any accrued under the mortgage to Luce, takes date from the time of its execution, 6th June, 1791. That deed is therefore to be laid out of the question.

2d. On the 13th August, 1801, William Boyle received of his brother Solomon a mortgage on the whole farm, called therein 200 acres, to secure $750; and on the 15th of same month, he assigned it to William Steele, and he, by his executors, to Stephen Thompson, in 1824, and the mortgage money has since been paid by the representatives of Solomon, 1846, according to Stephen Thompson's testimony. This mortgage raises a presumtion in law that William, at the time of its execution, had no title to the premises described in it.

If he or his assignees had obtained possession of the mortgaged premises, as they might have done, after default in payment of the mortgage moneys, the mortgagor and his representatives would have had the right, on the payment of the mortgage money, to redeem the premises and to have the possession redelivered. In a suit for redemption, William Boyle would be estopped from setting up a title in himself outside of the mortgage.

The presumption of law is, either that William never had any right to the property, or that he had released it. Such presumption may be overcome by evidence explaining the transaction, and showing its propriety. If there is any evidence of that kind, you will give the plaintiffs the benefit of it.

III. Again, Solomon Boyle, on 2d November, 1801, executed a mortgage to Matthias Williamson upon one lot of 188 1-2 acres, including the 76 acre lot.

2d. On 47 acres, 1 rood, and 13 rods. On the same day William Boyle executed a covenant, endorsed on the mortgage, to pay the mortgage money; and, on the 7th November, a further covenant, giving that mortgage priority over the mortgage of Solomon to him.

If the mortgage covered the land in question, or any of it, then its execution, and the execution of the covenants upon it, is competent evidence, and may aid you in determining whether William ever acquired any right to the property, or if he did acquire a right, whether at the time of the execution of that mortgage, November 2, 1801, he had not relinquished it.

If he owned the land, and suffered Solomon to give a mortgage upon it to a third person, it was a fraud upon that person, and a court of equity would so declare it, and charge the mortgage money upon the premises, whether owned by William or Solomon.

The letter of Caleb Russell to Matthias Williamson has only the effect of a written declaration made by the knowledge of William Boyle; and before you can give it any consideration you must be satisfied that William saw it, and had an opportunity of denying its statements. Of this you must judge from the circumstances, which the counsel have remarked upon.

If William saw and assented to it, you must determine how far it is an admission that the money proposed to be raised on the Williamson mortgage was intended to discharge the balance due on the Luce mortgage, and that the money raised by the mortgage from Solomon to William was used to pay off, so far as it went, the Luce mortgage.

If those moneys were so raised and applied, then you may be better able to determine whether William acquired

a *bona fide* title under the deed from the executors of Luce, or whether he only meant to take the formal title for the benefit of Solomon.

The presumption arising from this may also be explained.

IV. If, on the full consideration of all these matters, you are satisfied that William did acquire title to the fifty-two acre lot, or the other lots, or either of them, then you will proceed to inquire whether such right has been barred by the statute of limitations.

1*st*. As to the lots said to be held in cotenancy.

The general rule of law is, that the possession of one tenant is the possession of both.

No adverse possession can be set up by one of them until an actual ouster or turning out be proved.

The actual ouster may be shown either by an actual turning out or keeping out of the cotenant, or it may be inferred from circumstances; the refusal to account for the rents and profits; the exclusive occupation and receiving the rents, or reaping the profits for such a length of time as will raise the presumption of an exclusive right to the land.

What length of time is required to bar an entry by the mere permanency of the profits, is not very definitely determined. In the case cited of *Doe* v. *Prosser*, 1 *Campbell*, the profits had been received for thirty-six years, and the court held that to be sufficient; but it is not declared how much, if any less time will answer.

However that may be, if the tenant in actual occupation deny the right of his cotenant, or do any act from which such denial can be fairly inferred, and continued in the exclusive possession, receiving the profits of the farm for the term of twenty years thereafter, the statute bars the right of recovery.

When the statute of limitations begins to run, it runs over all subsequent disabilities. If it began to run in the

lifetime of William, before his death in 1827, it continued to run, notwithstanding the minority of his children; if not in the father's lifetime, it does not run against the lessors, as they were minors until 1833 or 1834, and twenty years have not since elapsed.

Was there an ouster during the lifetime of William?

In examining the question, you will look at the evidence of William's leaving the farm, and going to his wife's property. His removing to New York, and then to Baskingridge, and his living in an upper room while his house was in building. You must look at the evidence of an attempt to settle all their business, land and moveable property, spoken of by Mr. William Boyle, the witness; the setting off to William a piece of land at the lower end, and Solomon's refusal to assent to it, or sign any paper.

This was before the death of the witness' father, which occurred in 1829.

It was of course in William's lifetime, for he was one of the parties to it. You must judge how far this was a denial by Solomon of William's right, and whether of the whole right or only a part, and as to what part. Whether the refusal to ratify the settlement was because of William's claim, or of the claim by the sisters, or because of the arrangement of the land or of the personal property.

If there was a denial of William's right, then if he and his heirs slept over it for twenty years, the right is gone.

Again, William married in 1808, and then went to his wife's property.

You must determine, from the evidence, whether, after that, he received any of the profits of the farm, or exercised any acts of ownership over it, or whether Solomon was in the exclusive occupation and receipt of the profits, and if that was so by reason of Solomon's refusal, or of William's declining to take them. Then, the period of

forty-four or forty-five years having elapsed between that time and the commencement of the suit, you are at liberty to presume an ouster; and it is your province to determine whether there was an ouster or not.

If there was, then the right to recover is barred. If you find that the lessors of the plaintiff had a title to the land in question, or any part of it, you will find that the defendants are guilty of the trespass and ejectment laid to their charge, and assess the damages at six cents.

If you find for all that is claimed, the 52 acres in entirety and the 76 and 47 in cotenancy, you will express that; if only for a part, you will express what part.

If you find that the plaintiffs had no title to any of the premises at the time the action was commenced, whether William Boyle had no title, or his right is barred by lapse of time, you will find the defendants not guilty.

The said plaintiffs, by their counsel, excepted to so much and such parts of the said charge to the said jury, as related to the validity of the deed offered in evidence from the commissioners of the loan office to William Boyle, dated the fifth day of March, in the year seventeen hundred and ninety-nine, and its effects and operation.

The said plaintiffs also excepted to so much and such parts of the said charge of the said judge, whereby the said judge submitted it to the said jury, as a question for their determination, arising upon the evidence in the cause, whether the said William Boyle took the said deed from the commissioners of the loan office as a trustee for other parties, and not in his own right.

The said plaintiffs also excepted to so much and such parts of the charge of the said judge to the said jury, as submitted to the said jury as a question for their determination, arising upon the evidence in the cause, whether the said deed was procured from the commissioners of the loan office by fraud, practised by said William Boyle.

The said plaintiffs also excepted to so much and such parts of the charge of the said judge to the said jury, as related to the evidence offered to prove possession of the said premises by said William Boyle, jointly with said Solomon Boyle, and that the mere fact of his living in the house, and on the place, was not sufficient evidence of possession to give him a right as tenant in common.

The said plaintiffs also excepted to that part of the charge of the said judge to the said jury, in relation to the mortgage given by said Solomon Boyle to William Boyle, dated 13th August, 1801, offered in evidence in the cause, and the assignment thereof to William Steele, in which the said judge charged the said jury that the presumption of law arising from that mortgage and assignment was, that William Boyle never had any title to the property, or that he had released it.

The said plaintiffs also excepted to that part of the said charge to the said jury by the said judge, as submitted to them, for their consideration, as proper and competent evidence in the cause, the letter of Caleb Russell to Matthias Williamson, if the jury were satisfied that William Boyle saw it, and had an opportunity of denying its statements.

The said plaintiffs also excepted to so much and such parts of the said charge of the said judge to the said jury, as submitted to them, under the evidence in the cause, the question, whether William Boyle ever saw, and had an opportunity of denying the statement of the said letter of Caleb Russell to Matthias Williamson.

The said plaintiffs also excepted to all that part of the charge of the said judge to the said jury, as submitted to them, for their decision under the evidence in the cause, the question, whether William Boyle assented to the statements of the said letter from Caleb Russell to Matthias Williamson, the said plaintiffs insisting that there was no evidence in the cause from which the jury could lawfully infer

that William Boyle ever assented to the statements of said letter.

The said plaintiffs also, before the jury retired to consider of their verdict, requested the said judge to charge and instruct the said jury, as matter of law arising upon the said cause, that there was no evidence given in the said cause to said jury from which they could lawfully find that William Boyle admitted the contents of the said letter from Caleb Russell to Matthias Williamson, to be true; which charge and instruction the said judge thereupon refused to give to the said jury, and thereupon the said plaintiffs, by their counsel, excepted to such refusal of said judge.

The said plaintiffs also requested the said judge, before the said jury retired to consider of their verdict, to charge and instruct the said jury that the said mortgage given by said Solomon Boyle to said Matthias Williamson, and the mortgage given by Solomon Boyle to William Boyle, could not impair or affect the title or possession acquired under the deed from the executors of Luce; which charge and instruction the said judge refused, upon such request, to give to the said jury, and thereupon the said plaintiffs, by their counsel, excepted.

To each of which said exceptions the plaintiffs prayed a bill of exceptions, and that the same might be allowed and sealed; and they were allowed and sealed accordingly, and errors assigned thereon.

Argued by *Whelpley* and *J. W. Miller*, for plaintiffs in error, and by *T. Little* and *Whitehead*, for defendants.

The CHIEF JUSTICE delivered the opinion of the court.

Both parties claim title to the premises in question under Solomon Boyle, the elder. He left two sons, Solomon and William. The lessors of the plaintiff claim as the heirs at law of William. The defendant (Tunis) claims

under Solomon; White, the other defendant, being the tenant in possession. The question at issue is, whether the legal title to the premises, or any part thereof, was in William.

The premises consisted originally of three distinct tracts, designated severally as the fifty-two, the seventy-six, and the forty-seven acre tract. On the sixth of December, 1786, Solomon Boyle, the elder, mortgaged the fifty-two acre tract to the commissioners of the loan office of the county of Morris, constituted under the act of May twenty-sixth, 1786, "for striking and making current £100,000 in bills of credit, to be let out on loan." The mortgage having become forfeited, and the title, by virtue of the act, vested in the commissioners, the mortgaged premises were conveyed from them to William Boyle, for the alleged consideration of £8 8s. 6d., by deed dated the fifth of March, 1799, and recorded on the seventh of January, 1802.

On the sixth of June, 1791, the entire premises, including the three tracts, were mortgaged by Solomon Boyle, the elder, to William Luce, of the city of New York, to secure the payment of £214 4s., New York currency. This mortgage being forfeited on the eighteenth of November, 1800, a decree was obtained in the Court of Chancery, upon a bill filed by the executors of the mortgagee against Solomon Boyle, senior, and Solomon Boyle, junior, foreclosing the equity of redemption, and directing the title deeds and possession of the premises to be delivered to the complainants. Neither the title deeds nor the possession of the premises were surrendered; but, on the seventh of November, 1801, the balance of debt and interest on the mortgage was paid, and a receipt therefor taken in the name of Solomon and William Boyle. On the first of December, 1801, John Buchanan, one of the executors of Luce, the mortgagee, conveyed to Solomon and William Boyle, for the consideration of ten cents, the two tracts of

seventy-six and forty-seven acres, the fifty-two acre tract having previously been conveyed by the commissioners of the loan office to William Boyle. Under this documentary title, the lessors of the plaintiff claimed the whole of the fifty-two acre tract and the undivided half of the other two tracts.

The defendants, in support of their title, gave in evidence a deed of the entire premises, from Joseph Boyle and wife to Solomon Boyle, dated the twenty-ninth of January, 1800, and recorded on the fourteenth of August, 1801. It appeared that the premises had been sold by William Campfield, sheriff of the county of Morris, by virtue of an execution issued out of the Supreme Court, at the term of May, 1797, at the suit of Chetwood and Blanchard against Solomon Boyle, the elder, and that, in pursuance of said sale, they were conveyed to Joseph Boyle by deed, dated the eleventh of June, 1798. Solomon Boyle, junior, continued in possession of the premises from the date of the deed from Joseph Boyle till the time of his death. On the thirteenth of August, 1801, Solomon Boyle executed to his brother, William, a mortgage on the entire premises for seven hundred and fifty dollars. This mortgage, on the fifteenth of August, 1801, two days after its date, was assigned by William Boyle to William Steele. It was subsequently assigned, by the executor of Steele, to Stephen Thompson, and in the year 1846, (just forty-five years after its date) it was paid and satisfied by Solomon Boyle, junior, the mortgagor, and cancelled. On the second of November, 1801, Solomon Boyle, junior, executed to Matthias Williamson, junior, a mortgage for two hundred and fifty dollars, on the seventy-six and forty-seven acre lots, and on a large additional tract, but whether including the fifty-two acre lot or not, does not clearly appear. On the same day, William Boyle, by an endorsement on this mortgage, guaranteed its payment; and by a subsequent agreement, dated on the

seventh of the same month of November, and also endorsed upon the mortgage, he agreed that it should have priority over the mortgage previously given to him by Solomon Boyle, although, as it would seem from the date of the assignment, the latter mortgage had passed out of his hands.

The plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's. It is material, therefore, before examining the errors assigned, so far as they relate to the evidence on the part of the defence, to ascertain whether, in point of fact, the plaintiff offered evidence sufficient to put the defendants upon their defence. If he did not, it is clear that he cannot be prejudiced by any erroneous ruling of the court in regard to that defence, and consequently can have no right to complain of such errors, admitting them to exist.

The lessors of the plaintiff claim the premises in dispute under two distinct titles. To a part of the premises, they claim the sole and exclusive title, under a deed from the commissioners of the loan office. As to the residue of the premises, they claim title to an equal undivided moiety, by virtue of a deed from John Buchanan, one of the executors of William Luce. Several of the errors assigned relate to the ruling of the court in regard to the defence set up against this title. They will be first considered.

In support of this title, the plaintiff offered in evidence a mortgage from Solomon Boyle, senior, to William Luce, bearing date the sixth of June, 1791, a decree of foreclosure in the Court of Chancery at the suit of the executors of Luce against Solomon Boyle, senior, and Solomon Boyle, junior, on the eighteenth of November, 1800, and a deed from one of the executors of Luce to Solomon Boyle and William Boyle, dated the first of December, 1801. The only title to the seventy-six and forty-seven

acre tracts shown by the plaintiff, was under this deed. Does it convey any legal title ?

The mortgage to William Luce is a mortgage not of a term, but of the fee. It conveys the land to the mortgagee and his heirs. The bill for foreclosure is filed by the executors. The heirs are not parties. The decree is for a mere foreclosure of the equity of redemption. No sale is authorized. Now nothing can be plainer than that, upon such decree of foreclosure of a mortgage in fee, the legal title to the mortgaged premises is in the heir at law of the mortgagee, and not in the executor. It must be so, from the very nature of the conveyance and decree. The mortgage is a conveyance of the fee to the mortgagee and his heirs, subject to the right of redemption. The decree simply forecloses or bars the right of redemption. It does not profess to transfer or change the title, but simply to render it absolute. How, then, does the executor acquire any title at law to the premises which he can convey ? He takes none under the deed. The decree of the court gives him none. It declares, indeed, that the possession of the premises shall be surrendered, and the title papers delivered to the executor, but the legal title remains where the conveyance and death of the mortgagee vest it, *viz.* in the heir at law. True, while the mortgage retains its character of a pledge, of a mere security for the debt, it may be assigned by the executor. It will pass by an assignment of the bond, as a mere incident of the mortgage debt. It is regarded as a chattel interest. But when the right to redeem is foreclosed, its character as a pledge ceases, and the title to the land mortgaged vests absolutely, by force of the conveyance, in the mortgagee, while living, or in his heir at law, if he be dead. The title relates no longer to the money, but to the land. 2 *Powell* 423, *a, note P.* Equity will permit the executor to follow the land into the hands of the heir, so far at least as to satisfy the mortgage debt, but the foreclosure fixes

the title in the heir. *Clerkson* v. *Bowyer*, 2 *Vern.* 66. And the reason assigned in the books why the heir of the mortgagee should be made a party to a bill filed by the executor to redeem or be foreclosed, is, that otherwise, if the mortgagor should redeem, there will be no one before the court from whom a conveyance of the legal estate can be taken. 3 *Pow. on Mort.* 970, *a, note N*; *Wood* v. *Williams*, 4 *Mad.* 186.

No doubt the power of a court of equity may be exerted to remedy this difficulty. The leaning of all courts is to treat the mortgage as a mere security for the debt, They hold that, as a security for the debt, it belongs to the executor, and not to the heir. But it belongs to him merely as a security. The title to the land is not in him. It is believed that no case can be found sanctioning the idea that an executor after a decree of foreclosure can convey the legal title.

But there is a further difficulty in the way of the title under the executor's deed. It appears in evidence that, on the seventh of November, 1801, after the decree of foreclosure, and before the execution of the deed by the executor of Luce, the mortgage debt, on which the decree of foreclosure was made, together with the costs of suit, were paid and satisfied in full. Now it is a settled rule of equity, that the creditor shall not have both his debt and the pledge, and on this ground it is held, that if the mortgage creditor, after a decree of foreclosure, proceed against his debtor for the mortgage debt, the decree of foreclosure is *ipso facto* opened, and the debtor let in to redeem. The receipt of the mortgage debt in full by the executor, if it did not *ipso facto* avoid the decree of foreclosure, stripped the executor of all equitable right under the decree. A court of equity would not suffer him to hold both the debt and the pledge. The executor of Luce, at the date of the deed, had neither the legal nor the equitable title to the land in question. He had not the legal title, and

the mortgage debt being satisfied, he was not entitled to the possession of the premises, at law or in equity. The deed, therefore, could vest in the grantee, neither title nor he right of possession.

The title was admitted in evidence at the trial, on the assumption that Solomon Boyle, under whom the defendants claim, admitted this title, and permitted William to occupy the land in common with him under it. But there is no evidence in the cause that Solomon Boyle ever accepted that deed, that he ever saw it, or in any way whatever recognised its existence. He was in possession of the land prior to the execution of that deed under a claim of title. He was not in possession, as was suggested upon the argument, in common with his brother and sister, as the heir of his father. It appeared, by the evidence, that Solomon Boyle, the elder, was stripped of the legal title to every acre of these premies before his death. The title to the fifty-two acre tract had been, by operation of the statute, vested in the commissioners of the loan office, and by them conveyed, or attempted to be conveyed, to William Boyle. The equity of redemption in the entire premises had been sold at sheriff's sale, and purchased by Joseph Boyle, who conveyed to Solomon Boyle, junior. The proof of this fact does not rest alone in the recital of the deed to Solomon, nor in the recital of the mortgage executed by him to William; but the fact is directly averred in the bill filed for the foreclosure of the Luce mortgage, offered in evidence on the part of the plaintiff. Solomon Boyle, junior, was made a party to that bill, on the very ground that he held title to the equity of redemption under and by virtue of the sheriff's sale. The bill charges that he pretended to have title by virtue of a mortgage prior to the Luce mortgage, but avers the fact to be, that he purchased under a judgment at law, and held only the equity of redemption, subject to the mortgage of Luce.

Again, on the thirteenth of August, 1801, prior to the execution of the deed by the executor of Luce, Solomon Boyle executed to his brother, William Boyle, a mortgage in fee of the premises, in which it is recited that he derived his title from the deed executed by sheriff Campfield. This mortgage was accepted by William Boyle, and by him assigned to William Steele. On the second of November, 1801, prior to the execution of the deed by the executor of Luce, a second mortgage upon the premises was executed by Solomon Boyle to Matthias Williamson, junior. The payment of this mortgage was guaranteed by William Boyle, and it was also covenanted and agreed by him, that this latter mortgage should have priority over the previous mortgage executed by himself. Both the guarantee and the covenant were endorsed upon the mortgage. The fact then is established in evidence, that Solomon Boyle was in possession of the premises in question, in the year 1801, prior to the execution of the deed by the executor of Luce, and with the knowledge of William Boyle, claiming title under the deed from sheriff Campfield. That deed conveyed to him the equity of redemption in the premises subject to the Luce mortgage. The mortgage having been satisfied, it must be presumed that he continued in possession under that claim of title. Upon the extinction of the mortgage debt the possession became lawful. His title to the premises was as good as against all the world, except the mortgagee and those claiming under him. The executor's deed could confer no title whatever. The law will not presume that a party voluntarily divested himself of the rightful possession, and accepted either title or possession under an instrument totally invalid Much less will it permit a legal possession under claim of title to be disturbed, after the lapse of more than half a century, by evidence of equivocal acts of ownership in another, indicating a claim of joint property or possession. I am of opinion that the lessors of the plaintiff

showed no legal title to that part of the premises in dispute to which they claimed title under the executor of Luce; that, consequently, they were not entitled to go before the jury, nor to call upon the defendants to make their defence to that claim of title.    All the rulings of the court, therefore, touching this part of the plaintiff's case, addmitting them to have been erroneous, cannot prejudice the plaintiff's rights, nor entitle him to a reversal.   This disposes of all that part of the case which relates to the seventy-six and forty-seven acre tracts, in which the lessors of the plaintiff claim title as tenants in common with the defendant.

It is further assigned for error, that the judge erred in his ruling, and in his charge to the jury touching the title of the lessors of the plaintiff to the fifty-two acre tract, under the deed from the commissioners of the loan office. The deed was admitted in evidence, and went to the jury accompanied by certain instructions of the court, which form the subject of complaint.

It is objected, by the defendants in error, that the evidence in support of this part of the plaintiff's title is defective ; that the proof of the deed is illegal, and, if the proof be sufficient, that the claim is barred by the statute of limitations.   This may be so.   But unless the court can clearly see that no prejudice did or could result to the plaintiff by reason of the error, the assignment must prevail.   This court cannot decide that the claim is barred by the statute, because it does not appear that the whole evidence offered on the trial is contained in the bill of exceptions.   Nor can it be seen that no prejudice can result to the plaintiff by reason of the errors assigned.   The objection to this part of the plaintiff's case is not that the title relied on was radically defective, but that it was sustained by defective proof.   If the proof of the deed had, upon the trial, been adjudged defective, the plaintiff might have supplied the deficiency by additional proof.

This he cannot do, if the case is now decided against him upon this ground. He is concluded by the judgment. It cannot, therefore, be safely affirmed, admitting these objections to be valid, that the plaintiff cannot be prejudiced by the errors assigned. It remains to inquire if any error was committed.

The first error relied upon, touching this part of the case, relates to the mortgage given by Solomon Boyle to William Boyle, on the thirteenth of August, 1801. The objection applies, *first*, to the admissibility of the mortgage in evidence, and, *second*, to its legal effect.

It has already been intimated that the mortgage was legal and competent evidence against those claiming under William Boyle, for the purpose of showing that Solomon Boyle, the mortgagor, was, at the date of the mortgage, in possession of the mortgaged premises, claiming title under the deed from sheriff Campfield, with the knowledge of William Boyle. In this aspect and to this extent the mortgage was clearly admissible in evidence.

But it is further assigned for error, that the judge charged the jury that the acceptance and assignment of the mortgage by William Boyle raised a presumption in law that the mortgagee, at the time of the execution of the mortgage, had no title to the mortgaged premises. That the presumption of law arising from such acceptance and assignment was either that William Boyle never had any title to the property, or that he had released it. This will be found to be too broad a proposition to be maintained, either upon principle or upon authority. The proposition amounts to this, that the acceptance and assignment of a mortgage by the owner in fee of the mortgaged premises estops the owner from setting up his previous valid title, not only as against parties claiming under the mortgage, but against any claimant to the premises.

It is certainly true, as stated by the court, that if William

Boyle, the mortgagee, had obtained possession of the mortgaged premises under the mortgage, the mortgagor would have had the right, upon the payment of the mort-gage debt, to redeem the premises, and to have had the possession redelivered. And in such suit, neither the mortgagee nor his assignee would have been permitted to set up a title in William Boyle outside of the mortgage. It is clear that while the mortgagee is claiming title under the mortgage, or seeking to avail himself of any right or claim under it, either to title or possession, he cannot deny the title of the mortgagor. If the plaintiffs in this case were claiming title under the mortgage deed, they could not deny the title of Solomon Boyle at the date of its execution. The party, by claiming under the mortgage, admits the mortgagor's title at that time. *Jackson* v. *Tuttle,* 9 *Cowen* 240. But where, as in the present case, the adverse party is not claiming under the mortgage, but under an independent and paramount title, the naked fact of the acceptance and transfer of the mortgage will not estop those claiming under the mortgagee from showing that, independent of the mortgage, he had a valid subsisting title.

It is further assigned for error, that the judge submitted, for the consideration of the jury, the question whether the deed from the commissioners of the loan office to William Boyle was procured by fraud, or in trust for some other person, when there was no evidence either of fraud in procuring the deed or of the existence of a trust.

So far as appears by the bills of exceptions, there does not appear to be anything in the evidence to warrant the imputation of fraud in the procurement of the deed. Even if the evidence should justify the belief that the deed was taken in the name of William, to protect the property from his father's creditors, the deed would nevertheless be valid, except as against the creditors themselves. It is probable that the judge merely designed to submit to the

jury, the consideration of the question, whether, in view of the circumstances attending the purchase, the price paid, the subsequent acceptance of a mortgage from his brother upon the premises, and his failure to take and hold possession under the deed (if such were the fact), William Boyle ever claimed title in himself under the commissioners' deed. And in this there would be no error. But the questions submitted to the jury seem to cover broader ground; they at least, naturally admit of a different interpretation, and may (as it is insisted they did) have misled the jury in their deliberations.

The judgment must be reversed, and a *venire de novo* awarded.

This disposes of the questions necessarily involved in the decision of the case upon the errors assigned. But inasmuch as the court concur in opinion in regard to the insufficiency of the proof of the deed under which the plaintiff claims title to the fifty-two acre tract, to the admissibility of which the defendants excepted, it may be for the interest of the parties that the opinion of the court should be now expressed.

To the fifty-two acre tract the plaintiff claims title under a deed from the commissioners of the loan office of the county of Morris, bearing date on the fifth of March, 1799. The original deed was not produced. The plaintiff relied upon the record of the deed in the clerk's office of the county of Morris. The evidence was objected to upon the trial, but admitted. There are two objections to the competency of this evidence.

I. The deed was not proved in such form as to render the record competent and legal evidence. The deed is proved by one of the subscribing witnesses, who deposes that he saw "the grantors, John Mills and Joseph Lewis, seal and deliver the within written deed, as and for their voluntary act and deed for the uses therein mentioned." The act, under the authority of which the deed

was executed, constitutes the commissioners of the loan office a body corporate and politic, by the name of "the commissioners of the loan office of the county of Morris." *Pamph. Laws* 1785, *page* 299, § 14. The act further prescribes the form of the deed, and directs that the commissioners shall, to the deed, put one seal as the seal of the loan office, and jointly take off the seal from the wax, and sign their names. *Ibid* 306, § 30. The proof of the deed is radically defective—

*First.* Because there is no proof that John Mills and Joseph Lewis, the alleged grantors, were the commissioners of the loan office of the county of Morris. They are not described in the deed as such. Their names are not mentioned in the deed. The deed, as prescribed by the act, is in the name of the corporation; the concluding clause of the deed proves nothing in regard to its execution any more than it would in the case of a deed executed by an individual. So far as respects the official authentication of the deed, there is no proof whatever that Mills and Lewis were commissioners of the loan office, or in any way authorized to execute the deed.

*Second.* There is no proof that the seal affixed to the deed was the seal of the corporation, or that it was affixed to the deed as the corporate seal, as prescribed by the act. A corporate deed can be proved only by proving that the seal affixed is the seal of the corporation, or that it was affixed as the corporate seal by an officer of the corporation, or other person thereunto duly authorized. Proof that the individuals whose names are subscribed to the deed sealed and delivered the instrument as their deed, neither proves the seal of the corporation, nor their authority to execute the deed. In both these particulars the proof of the deed is defective.

*Third.* There is no proof that the parties by whom the deed purports to have been executed signed the deed. It must be borne in mind that the inquiry is not what might have been the legal presumption in favor of the due

execution of the instrument, if the original deed itself had been produced and offered in evidence. The simple inc iry is, was the official proof of the deed sufficient to make the record competent and legal evidence within the requirements of the statute. The act under which the deed was executed expressly requires that the commissioners shall sign the deed. Signing by the commissioners is an essential ingredient of its due execution. The act respecting conveyances, passed June seventh, 1799, and which was in force when this deed was proved, requires that the subscribing witness, by whom the deed is proved, shall prove that the parties to the deed signed, sealed, and delivered the same as their voluntary act and deed. It is settled, in the construction of this statute, that a certificate of the acknowledgment or proof of a deed is good, if it shows a substantial, though not a verbal compliance with the requirements of the act; and that a departure from the phraseology of the statute, and the omission of phrases therein used, will not vitiate the certificate, if it contain words equivalent to those omitted. *Den* v. *Geiger,* 4 *Halst.* 225.

In *Sharp* v. *Hamilton,* 7 *Halst.* 110, the court held, in the case of a deed executed by individuals, that a certificate that the grantors acknowledged the same to be their act and deed for the uses and purposes therein mentioned, was a substantial compliance with the statute. The acknowledgment, say the court, is full as comprehensive as if done in the language of the act; for it could not be the deed of the parties without embracing the several requisites specified in the act, *viz.* signing, sealing, and delivery. The decision rests upon the ground that it could not be the deed of the party, without being signed by him, and therefore an acknowledgment that it was his deed was equivalent to an acknowledgment that he signed it. Whether this is a valid reason may well be questioned. At the common law, signing was not an essential requisite of a deed.

A deed is defined to be a writing sealed and delivered. *Co. Litt.* 171, 2 *Bla. Com.* 295. From the time of the Norman conquest, the Saxon practice of signing deeds fell into disuse, and deeds were executed merely by sealing. "The neglect of signing, and resting only on the authority of seals," remained, says Blackstone, "very long among us; for it was held in all our books that sealing alone was sufficient to authenticate a deed, and the common form of attesting, *viz.* sealed and delivered, continues to this day; notwithstanding the statute 29 *Car.* 2, *ch.* 3, revives the Saxon custom, and expressly directs the signing in all grants of lands; in which, therefore, signing seems to be now as necessary as sealing." 2 *Bla. Com.* 306.

Mr. Preston, however, than whom few modern authors are more familiar with the law relating to real estate, regards this idea of Blackstone, that the statute of frauds rendered the signing of a deed necessary, as a mistake resulting from inattention to the language of the statute, which distinguishes between deeds, and agreements in writing not under seal, the latter of which only are required to be signed; and he holds that, even under the statute of frauds and perjuries, signing is not necessary to the validity of a deed. *Sheppard's Touch.* 56, *and note* 24.

In *Cooch* v. *Goodman,* 2 *Ad. & E., N. S.* 597, Lord Denman, after alluding to this diversity of opinion upon the question, whether signing is necessary to the validity of a deed, adds, "It is curious that the question should now, for the first time, have arisen in a court of law, and, perhaps, as curious that it is not necessary now to determine it." This was in 1842, some years after the decision in the case of *Sharp* v. *Hamilton,* 7 *Halst.* 109.

If sealing and delivery alone are essential to a deed; if it may be the deed of the grantor, without his signing it; if the acknowledgment or proof of the signing is rendered necessary only by the statute prescribing the mode of acknowledgment or proof, then an acknowledgment

that it is the deed of the grantor, is not equivalent to an acknowledgment that he signed, as well as sealed and delivered it. But it is not my purpose, nor is it necessary to the decision of this case, to question the authority of the case of *Sharp* v. *Hamilton*. The point ruled in that case may be considered as settled. It may be assumed as the law in this state, that signing is essential to the deed of an individual, or, if there should be a doubt upon this point, the case may rest upon the ground adopted in some of the reported cases, that sealing includes signing. *Lemayne* v. *Stanley*, 3 *Levinz* 1; *Warneford* v. *Warneford*, 2 *Stran.* 764. But neither of these principles apply to the case now under consideration. The deed in question is the deed of a corporation. As a general rule, the deed of a corporation is proved by proof of its corporate seal. No signature by the corporators is necessary, though in practice it is usually attested by one or more of the officers of the corporation. The deed is complete without a signature. Proof that it is the deed of the corporation, therefore, is not equivalent to proving that it was signed by any one. If it be true in the case of the deed of any individual, that it cannot be his deed without signing, or that his sealing includes his signature, neither principle applies to the deed of a corporation. The affixing of his individual seal by the grantor to a deed may import that he signed it, but the affixing of a corporate seal cannot import that all the corporators signed it, or that the proper officers signed it. The seal of the corporation is neither the seal of the individual corporators nor of the officers.

The deed in question is executed under the authority of a particular statute conferring special powers. The deed was given in execution of the power. The power must be strictly pursued. The statute requires that the deed shall be under the corporate seal, and shall be signed by the commissioners of the loan office. The corporate seal certainly

does not prove that it was signed by the commissioners, nor does that fact appear in the formal proof of the deed. The proof would have been precisely the same if the commissioners had not signed it.   If the proof contained in the certificate had been made in a court of justice by a living witness, it would have been radically defective.   It certainly can have no greater efficacy because it is endorsed upon the deed.   Where a statute has added an additional solemnity to the ordinary execution of a deed, it certainly cannot be presumed from the proof of the deed in the ordinary form that the additional solemnity was observed.   If such rule of construction is adopted, the statute becomes a dead letter.

The proof of the deed made by the commissioners of the loan office to William Boyle stands precisely in this dilemma.   If the seal affixed to the deed be regard as the seal of the persons who signed it, so as to prove their signatures, it is not the deed of the corporation, and clearly not within the requirements of the act.   On the other hand, if the seal affixed is the corporate seal, it cannot prove the signatures of the commissioners, and there is no proof that the power conferred by the statute has been executed in conformity with the statute.   In either event the proof is defective.

The deed was inadmissible in evidence upon another ground, *viz.*, that there was no proof that the land was advertised or sold at public auction, as required by the statute. The execution of a power to sell lands by public officers must be in strict pursuance of the law, or no title is conveyed. The advertisements required by law are essential preliminaries to the validity of a sale.   In this state, the recital in a sheriff's deed of a compliance with the requirements of the statute, has always been regarded as sufficient *prima facie* evidence of the fact.   In the absence of such recital, the party must adduce other proof.   The want or omission of such recital has been held to impose

on the party claiming by means or the deed, the proof that the requisite public notice had been given, and that the sheriff had, in this respect, fulfilled the requirements of the statutes regulating such sales. *Den* v. *Downam*, 1 *Green* 141.

It is not denied that the advertisement and sale at public auction are essential to the validity of the deed ; but it is insisted that this requisite will be presumed from mere lapse of time. It is true the rule is laid down broadly by Greenleaf (*Ev.* § 20) that the performance of the requirements of the statute by public officers in the case of ancient deeds will be presumed. But, in every case cited in support of the position, it will be found that possession accompanied and followed the deed ; and this we take to be the true limitation of the principle. *Pejepscut Proprietors* v. *Ransom*, 14 *Mass.* 145 ; *Blossom* v. *Cannon, Ibid* 177 ; *Colman* v. *Anderson*, 10 *Mass.* 105 ; *Drouet* v. *Rice*, 2 *Rob. Louis. R.* 374 ; *Society, &c.*, v. *Wheeler*, 1 *New Hamp. R.* 310. The same rule applies in regard to the proof of the signatures to ancient deeds. They will be presumed to be genuine from the necessity of the case, because proof of their genuineness cannot ordinarily be procured. But the presumption arises only in case the deed comes from the proper depository, and is accompanied and followed by possession, or in case there is other collateral proof to warrant the belief that the deed is genuine. *Greenleaf's Ev.* § 21, 144, and cases there cited.

There must be some other circumstance, besides the mere fact that the deed is ancient, to warrant the presumption that it is genuine. And, upon the same principle, there must be some other circumstance than the antiquity of the transaction to warrant the presumption that the requirements of the statutes touching the sale of land have been complied with. Upon any other principle, antiquity would sanction the grossest forgeries, and give validity to sales made in violation of the clearest principles

of law. It must be borne in mind, that if it be rendered difficult by lapse of time for the party offering a deed to make the necessary proof, either of its genuineness or validity, it is equally difficult for the adverse party to disprove it. There must be some circumstance to raise a presumption in favor of the instrument, and to cast the burden on the adverse party. All the cases go upon this ground.

The strongest and most satisfactory of these circumstances is, that possession accompanied the deed, or that the parties affected by it in some way recognized, or acted upon its validity. In the present case, there is no proof that possession accompanied this deed, or that the grantee claimed title under it, or that the adverse party ever recognized its validity or knew of its extstence. After its execution, the grantee accepted a mortgage upon the premises from a party claiming under an adverse title, and assigned that mortgage as a valid encumbrance to a third party. So far as appears, the commissioners' deed was treated as a nullity by the parties in interest. After the lapse of fifty years, the grantee being dead, there being no proof that in his lifetime he ever named that deed, or claimed title under it, the original deed itself not being produced, it is sought, by force of its antiquity alone, to establish the validity of the conveyance and to disturb a long continued and quiet possession. Under such circumstances, no presumption can arise in favor of the deed. There is no proof, independent of presumption, to sustain its validity.

If the bill of exceptions contains all the evidence in support of the plaintiff's claim, we are of opinion that he is not entitled to recover. But inasmuch as the bill of exceptions may not disclose the whole of the plaintiff's case, and as additional evidence might have been offered had the ruling upon the trial been different, the judgment below must be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, the CHIEF JUSTICE, Judges OGDEN, ELMER, POTTS, RYERSON, VREEDENBURGH, ARROWSMITH, CORNELISON, HUYLER, RISLEY, VALENTINE, and WILLS.

CITED *in Wade* v. *Miller*, 3 *Vr.* 304; *Shields* v. *Lozear*, 5 *Vr.* 503; *State* v. *May. & Ald. of Jersey City*, 7 *Vr.* 195.