## CYRUS S. LEPORT v. WILLIAM TODD.

1. A purchaser at sheriff's sale becomes vested, by operation of law, with all the interest which the defendant in execution had in the land; and such interest is sufficient to enable him to maintain ejectment to recover the property from a party whose possession, as against the purchaser, is tortious.

2. Where a party enters into possession of premises as tenant, he must be presumed to have remained there as such. If the tenant claim to hold adversely, the burthen is upon him to show an open and manifest renunciation of the tenure. It is the existence of an intention to claim the fee, and the doing of some act indicative of such intention, which converts the occupation of land into an adverse possession.

3. Although some of the errors assigned are well taken, yet if they did not injuriously affect the defendant on the trial, the judgment should not be reversed.

In ejectment. Error to the Circuit Court of the county of Morris.

This was an action of ejectment, tried before Justice VAN DYKE, at the Morris Circuit, in October Term, 1865.

The facts disclosed by the undisputed evidence at the trial were the following, viz.: that John Hannah had a good paper title for the premises in dispute, and on the thirteenth of July, 1830, mortgaged the same to Nathaniel Pettit; that in the year 1834 or 1835, one Abram J. Drake went into possession, the owner, John Hannah, at that time being in the neighborhood, but shortly afterwards leaving for the west, where he has since continued to reside; that Abram J. Drake acquired his possession by virtue of a lease or verbal agreement, made with John Hannah, a fact which he repeatedly admitted to various persons from time to time while holding the property; that on the fifteenth of June, 1846, after Drake had been over ten years thus in possession, he acquired, by assignment, the mortgage above mentioned, made by John Hannah to Nathaniel Pettit, and that this assignment was executed by one William Pettit, who professed to be the executor of Nathaniel, the mortgagee, there being, however, no evidence of his official character; that after his acquisition of this mortgage, Abram J. Drake declared on all occasions that he had at first rented the land of Hannah, but that from the time of the assignment of the mortgage to him, he held the property under that instrument; that on the twenty-first of April, 1853, while Abram J. Drake was in possession, a judgment was obtained against him, and that the premises were duly sold as his property, to the plaintiff, Leport, by force of an execution issued thereon, the deed of the sheriff bearing date the eighteenth of Feb-

ruary, 1854; that just before, or just after the rendition of this judgment—the evidence in this respect being uncertain —Abram J. Drake transferred the Pettit mortgage to his son Moses, who subsequently, on the twenty-eighth of March, 1864, assigned it to Augustus J. Bell, who thereupon put the defendant, Todd, in possession; that Leport, the plaintiff, never entered upon the property, the possession remaining in Abram J. Drake until his death, in 1862, after which his sons, Moses and William, or one of them, occupied until the defendant took possession, as above mentioned.

It did not appear in the case that the bond, which was secured by the Pettit mortgage, was assigned by Moses Drake to Bell, but, on the contrary, William Drake testified that this instrument had been passed to him, and still remained in his custody. The suit was brought in July, 1864.

The charge of the judge upon these facts was as follows, viz.: "This action is brought to recover the possession of the premises in question. The defendant was in possession at the time of bringing this action. Has the plaintiff such a right of possession as will enable him to recover? There are two questions—

"*First.* Has the plaintiff shown a *prima facie* title?

"*Second.* If he has, has the defendant shown a better title?

"It is not pretended that Abram J. Drake had a deed, and the title in this action, or the right to recover, must turn on possession. The defendant in this suit has not shown any right or title to the premises in question. Twenty years' adverse possession gives a title, and the plaintiff claims under such title. If a party goes into possession, even with consent of the owner, and holds it twenty years adversely, he gets title. Abram J. Drake went into possession in 1834 or 1835, under some arrangement with John Hannah, and, by the evidence, continued in possession up to 1853, and then his sons seem to be in possession. The best evidence is that of William Drake, and he swears that his father went into possession under a lease or agreement with John Hannah. It does not matter how a man gets possession. If he

holds twenty years without recognizing any one as owner he will get a title, and I so charge. It don't appear that any rent was paid by Drake, but he continued in possession without interruption. Drake got the mortgage and held under that, and it makes no difference whether he got any title by the mortgage or not; he thought he did, and claimed the property. As to the eighteen years prior to 1853, he acknowledged no one over him. He had undisturbed possession, and the jury, under this evidence, are authorized to find for the plaintiff. If Drake had remained in possession until this suit was brought, under the arrangement proved by William Drake, he could not have been turned out by Hannah himself, or any one claiming under him. His possession would have been a bar, and if this be so, then Leport is in Drake's place. In 1853, a judgment was got against Drake, and a sale was made of Drake's rights and all he had in these premises, and they were purchased by the plaintiff. It was a sale of an absolute right of possession. That put Leport in the same position as if Drake had conveyed directly to him. After Leport had then gone into possession, he would have had a good title to the premises in question. Does his not taking possession make any difference as to his right? I say Leport, by his deed, placed himself in Drake's place, and he is entitled to the benefit of Drake's possession since the sale by the sheriff. Leport, under the circumstances, could have recovered against Drake for use and occupation. At the time of the sale of the sheriff, Drake had such an interest in the premises as could be levied on and sold, and Leport purchased it."

The jury found a verdict for the plaintiff. Various exceptions having been taken to the rulings of the court, a writ of error was brought to remove the case into this court, and errors were assigned accordingly. Those material to be noticed are found in the opinion of the court.

The cause was argued before the CHIEF JUSTICE, and Justices ELMER, HAINES, and BEDLE.

For the plaintiff in error, *Augustus W. Bell*.

For the defendant, *P. D. Vroom*.

The opinion of the court was delivered by

BEASLEY, C. J.   The point upon which this suit was submitted to the jury, and upon which the verdict passed was, whether the plaintiff was possessed of a right to the premises in question, by an adverse possession of twenty years' duration. This was the view in which the case was presented in the charge of the judge who presided at the trial; and it is to various propositions of law touching this topic contained in such charge, to which exceptions have been taken.

Such of these objections as I shall notice are thus stated in the bill of exceptions—

*First.* The defendant, by his counsel, insisted and asked the court to charge the jury, that if they believed that Abram J. Drake entered into the possession of the said premises as a tenant of John Hannah, he was to be presumed to have continued there as a tenant until the contrary was proved.

I think it must be conceded, upon reflection, that the court erred in refusing to charge, as requested, upon this point.   It appeared from the testimony of several witnesses, and, indeed, was a fact that was not in dispute, that Abram J. Drake, while possessed of the premises in question, declared that he had entered as the tenant of John Hannah, who was the admitted owner.   The counsel for the defence stood on the ground, that as he had entered as tenant, in presumption of law, such tenure continued until the presumption was overcome by evidence.   This appears to have been the rule as heretofore understood; nor am I aware of any case which throws it in doubt.  .The denial of the right of the landlord on the part of the tenant, in the feudal system, was deemed a breach of faith, highly penal in its consequences, and such denial has always been regarded in law as an unlawful act, and the result is, that if it is alleged such

act was committed by the tenant, he who asserts the doing of the wrong must prove it. Indeed it is clear, that the law not only presumes that the tenant holds possession of the demised premises in allegiance to his landlord until the reverse appears, but that it also demands very plain proof of the fact that the tenant disclaimed such allegiance. The true principle was forcibly stated by the Court of Appeals in South Carolina, in these words, viz., "That when a tenant claims to hold adversely, he must show when that intention was made known to his landlord." *Whaley* v. *Whaley*, 1 *Spear* 225. By which it is to be understood, that a disclaimer by the tenant will not be implied, and can only be proved by express notification, or by its equivalent—some unmistakable act. I think the court should have charged as requested, to the effect that it is a legal presumption that a possession, beginning in the assent of the landlord, continues in subordination · to his title until a change of tenure is shown by the evidence. There was error in this particular.

*Second.* The court was asked, in behalf of the defendant, to charge, that if the jury believed that Abram J. Drake held under his lease or agreement, proved by William Drake, up to the time he bought the Pettit mortgage, then no part of that time could be taken into account as adverse possession to give title.

It was an admitted fact at the trial, that Abram J. Drake entered upon the premises in 1834 or 1835, and that he continued to hold until the year 1846, when he purchased the encumbrance upon the property, called the Pettit mortgage. William Drake, one of the witnesses, testified that his father, Abram J. Drake, stated to him the mode in which he claimed to be possessed during this period. He says, to use his own language, "when father went into possession of this lot, he went in under a lease or a verbal agreement until the debt he (John Hannah, the owner,) owed father should be paid; I never knew of that arrangement being altered; I do not know the amount of the rent a year." "Until father got that mortgage he claimed the property

under the lease, and after that, he claimed it under the mortgage." It was upon this state of facts that the counsel of the defendant asked that the jury should be instructed, that if they believed, from the testimony of this witness, that, in point of fact, Abram J. Drake was in by force of the arrangement mentioned by the witness, the period of such holding was not to be deemed by them to have been adverse. It is to be noted that this was a matter of vital importance in the view of the case taken at the trial, for if this interval of time were excluded, the title from adverse possession claimed by the plaintiff failed on account of the insufficiency of its duration.

I am not able to perceive any ground whatever for the refusal of the court to charge, on this head, as requested. This exception was well taken.

*Third.* That part of the charge was objected to, in which the jury were instructed, that if a party went into possession of property, even with the consent of the owner, and held such property for twenty years, he thereby got a title.

Upon this branch, I think the instructions of the judge, fairly construed, must be understood as conveying to the jury this idea: that although Abram J. Drake entered into possession as tenant of John Hannah, the owner of the property, still if he paid no rent, and was not interrupted in his enjoyment of the land by the owner, such possession was to be esteemed to have been adverse. The precise language of the charge was this: "The best evidence is that of William Drake, and he swears that his father went into possession under a lease, or agreement, with John Hannah. It does not matter how a man gets into possession. If he holds twenty years, without recognizing any one as owner, he gets title, and I so charge. It don't appear that any rent was paid by Drake, but he continued in possession without interruption."

This instruction is not consistent, as it seems to me, with the well established rules of law upon this subject. If a

person take possession under another, it is not necessary, as the charge above quoted supposes, for such tenant to do any further act by way of recognition of the title, by force of which he entered. Under such circumstances, the mode of acquiring the possession is a fact of the first importance, and in the absence of plain proof to the contrary, amounts to demonstrative evidence that the land continues to be held of the owner. In such a condition of things, the mere non-payment of rent, which was not demanded, and an occupation unmarked by any feature incompatible with the incidents of an ordinary tenancy, were circumstances of no moment in the solution of the question of adverse possession. The jury should have been told that in view of the admitted fact that the occupation began in the permission of the owner, the burthen was upon the tenant to show an open and manifest renunciation of the tenure. It is the existence of an intention to claim the fee, and the doing of some act indicative of such intention, which convert the occupation of land into an adverse possession ; and this is the doctrine on which the decision of every case proceeds.

But although I have reached the conclusion that the instruction of the court to the jury was, in the several important particulars above considered, contrary to law; still, in my opinion, the defendant cannot prevail on this writ of error The ground of this conclusion is, that it appears clearly from the bill of exceptions, that the plaintiff, at the trial, was entitled to the verdict which has been cast in his favor.

It has been stated already, that the case was regarded at the trial as involving the single question, whether the plaintiff and those under whom he claimed, had held the premises adversely for twenty years. This I think was an entire misconception of the legal aspect of the facts which were proved. Indeed, on the ground of adverse possession for the statutory period, it seems obvious the plaintiff was not entitled to the verdict which he received, for at no point of time embraced by the evidence, did it appear that a possession of

that kind existed; for Abram J. Drake, whose occupation in this respect was relied on, always declared that he held first as tenant, and then under the mortgage given by the owner of the premises, and these declarations, so far from evincing any hostility to the real title, were a manifest acknowledgment of the holder of such title, first as landlord, and then as mortgagor. It was a mistake, therefore, to found any verdict on this ground. But in a legal point of view it was of no importance whatever, whether or not there had been an adverse holding for twenty years, or for any other period of time. The complexion of the case, as it appeared at the trial, was this: the defendant, Todd, it could not be pretended was possessed of any legal claim to the premises, nor was Bell, under whom he entered, in any better situation; for, although he had a mortgage on the land, the title at law, it was clear, had not passed to him by force of that instrument, from admitted defects in the line of its transfer to him. In a court of law, the defendant stood in the light of a mere trespasser, and to this effect the jury were properly instructed. This being the position of the defendant, it is clear that as against him, it was not necessary for the plaintiff to prove anything more than a right springing out of a prior peaceable possession. Whether such prior possession had been under a claim of right, and adverse in a technical sense, or had continued for any particular period, were not inquiries which the defendant, as a mere wrongdoer, could bring into the controversy. In *Den* v. *Sinnickson*, 4 *Halst.* 149, this court recognized the rule as perfectly established, that in ejectment the elder possession, though for a less term than twenty years, carries with it a presumption of title that is sufficient to put the defendant upon his defence, and will overcome the later possession of a naked trespasser. It will be observed, therefore, that the only point of inquiry with which the jury had any concern, was whether the plaintiff had proved to their satisfaction his right of prior possession, and in this respect no room was left for doubt. The proof was this: in the

Leport v. Todd.

year 1854, the plaintiff, Leport, purchased at sheriff's sale the right and interest which Abram J. Drake possessed, at that time, to the land in question. At the time of this sale, Drake was in the undisputed possession of the premises, and had held them in the same manner previously for several years. The sheriff's deed was produced by the plaintiff, and the judgment and proceedings under the execution were conceded to have been regular. By this sale and conveyance, Leport then acquired the right of Drake in the property; that is, at the least, a right of possession to it, which was paramount to the claims of all persons except such as could show a superior right. That Drake's interest was susceptible of being levied on and sold by the sheriff, cannot be questioned. On this point there is no disagreement in the authorities. *Den* v. *Winans*, 2 *Green* 1; *Den* v. *McCann, Penn.* 438; *Den* v. *Johnston*, 2 *Halst.* 14; *Overfield* v. *Christie*, 7 *Serg. & R.* 177; *Jackson* v. *Graham*, 3 *Caines' R.* 188; *Dickson* v. *Smith*, 25 *Barb.* 103.

The plaintiff, by his purchase of the sheriff, became vested, by operation of law, with the interest of Drake in the land, and that interest was sufficient to enable him to recover against the defendant in the present action. All that the plaintiff could be required to prove was a possession antecedent to the entry of the defendant which was tortious. And on this ground the right of recovery was clear.

As, therefore, the errors assigned, and which have been deemed well taken, did not injuriously affect the defendant on the trial, the judgment should not be reversed.

Judgment affirmed.