49 N.J. Super. 385 (1958)
140 A.2d 79
IDA BUCCAFUSCO, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOSEPH J. BUCCAFUSCO, DECEASED, PLAINTIFF-APPELLANT,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1958.
Decided March 24, 1958.
*388 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Mortimer Neuman argued the cause for plaintiff-appellant (Messrs. Grossi & Kanis, attorneys; Mr. Samuel F. Kanis, of counsel).
Mr. Herman H. Wille, Jr., argued the cause for defendant-respondent (Mr. Luke A. Kiernan, Jr., attorney).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff, Ida Buccafusco, widow and administratrix ad prosequendum of the estate of Joseph J. Buccafusco, deceased, appeals in this death action from a judgment for defendant, upon a jury verdict of no cause for action. The asserted trial errors are concerned essentially with the charge of the court.
The action arose from the death of Joseph J. Buccafusco by electrocution when he came in contact with a 2400-volt power line belonging to the defendant. The wire, strung overhead on poles located along the street, had become dissevered during the wind and rain of hurricane "Carol," and was hanging loose from a tree about six feet above the street. The accident occurred on August 31, 1954 at 10:45 A.M. at the northwest corner of Concord Street and St. Paul's Avenue, in Jersey City.
The plaintiff's theory of negligence is based in her complaint in two counts and is embodied in the pretrial order. The first count alleges that decedent was killed by electricity from one of defendant's electric wires which had become loosened and fallen to the street. In the second count plaintiff alleges negligent construction and maintenance of the defendant's wires as the cause of decedent's death, particularizing *389 that: the wires were improperly strung so as to pass through a tree and touch its branches; the insulation was worn and broken from friction with the branches of the tree; defendant knew or should have known by inspection that the wires were in improper condition; and it knew one hour before the accident that the wire had broken and fallen, but failed to remove the live wire from the public highway.
Defendant admitted ownership of the power line, but denied the charge of negligent construction and maintenance, alleging that at the height of hurricane "Carol," when it was "windy and raining," its wires were knocked down by a television antenna which fell upon them, causing the wires to burn and break. As separate defenses the defendant affirmatively asserts the decedent's contributory negligence, assumption of risk  both based upon the claim that decedent deliberately "jumped and reached for the wire and was electrocuted," although he had been warned not to do so; act of God; unavoidable accident, and the intervening negligence of a third party (the owner of the television antenna) over whom it had no control.
It is appropriate to summarize briefly some of the testimony. On behalf of the plaintiff there was testimony by Mrs. Hickey and her mother, both of whom observed the occurrence of the accident from the window of Mrs. Hickey's apartment on the opposite corner. They said that decedent was crossing the street going to his home. As he passed under a tree he did not jump but "raised his hand as if to protect himself and his hand shot up and he fell back down in the street backward." Mrs. Hickey said decedent "must have seen the wire" but she did not know whether or not his hand came in contact with it. She said the wire was "hanging very low from the branch" and she did not see any antenna in or near the tree at the time. Mrs. Hickey's testimony was impeached by her prior statement given to one of defendant's investigators in which statement, it was testified, she said that decedent walked over to the wire, looked up at it, and stretched up or jumped slightly in trying to reach it.
*390 Her mother, Mrs. Cannito, testified that while she witnessed the electrocution, she did not see decedent jump off the ground or touch the wire nor did she see any television antenna where the accident took place.
Mr. Lucas testified that the wire ran through the tree and was swinging back and forth over the sidewalk and gutter. He could not recall seeing decedent jump or raise his hand for the wire, but he did strike the wire with his hand because decedent had it in his hand when he was electrocuted. He could not say that decedent "intentionally grabbed" the wire. However, his testimony was impeached by a prior statement given to defendant's investigator that decedent, after being told to "keep clear," then "jumped and grabbed the wire."
David Kronberg, a nearby storekeeper, observed the hanging wire, called the defendant to inform it of an emergency, and also called an ambulance. There was proof on both sides that the accident was preceded by a "loud cracking noise," a "big flash" in the vicinity where the accident occurred.
Several eyewitnesses, who were neighbors of decedent and who saw the whole occurrence from the street within 25 feet of decedent, testified for defendant that decedent was warned not to touch the "live wire" and that he jumped up once trying to reach the hanging wire, missed, and made a second try when, unfortunately, he was successful in reaching the wire and was immediately electrocuted.
Plaintiff's expert testified that in his opinion the wire was caused to fall by swaying in the wind and rubbing against the branches so that it eventually deteriorated, resulting in a short circuit and probably burning until it broke and fell. He said that for proper maintenance, inspection of such wires should be made at least every six months, and that it was unsafe to run wires through trees unless the wires were insulated or the trees properly trimmed as the constant rubbing of the wires against the branches would cause rapid deterioration.
*391 Defendant advanced as its theory of the cause of the wire falling that the wind blew down a nearby roof-top television antenna and it fell across two parallel wires, one the power line and the other a neutral wire, causing a short circuit and burning of the wires. The antenna with two burn marks on the crossbar was received in evidence. The defendant denied it had the wire that caused decedent's death, although one of its employees testified that he examined the burned wire and turned it over to defendant's storeroom.
The jury returned a verdict of no cause of action. On this appeal plaintiff charges a number of points of reversible error. The first is that she was limited in the direct examination of her expert witness and the cross-examination of defendant's expert to proofs of industry custom as to standards of installation as of 1915, unless she could show interim changes or repairs by defendant. She also contends that the court erred in its charge to the jury in the following respects: by charging that defendant could not be negligent if it adhered to industry standards; by stating that there was no duty upon defendant to cover its electric wires so as to prevent injury; in the manner in which it charged that defendant had the duty of shutting off the flow of electric current within a reasonable time after learning of the loose wire; in charging that there was no proof that defendant's circuit breaker equipment was not installed or maintained in accordance with standard practices; failure to charge defendant with the duty of foreseeing and providing against such incidents as the antenna falling on its wires and causing them to burn and break; and stating without qualification that if decedent deliberately took hold of the wire, the jury must find for the defendant.
Before discussing the various grounds of appeal enumerated above, we deem it appropriate to consider the plaintiff's complaint that defendant's incomplete answers to interrogatories made it impossible to develop proof as to the physical evidence of the broken wire and defendant's records as to maintenance, repair or replacement of the wire. When plaintiff received defendant's answers to interrogatories *392 and they did not disclose the information plaintiff was seeking, she could have served supplemental interrogatories or asked for additional or more specific answers. R.R. 4:23-11. The demand for answers to interrogatories may relate to any relevant matter which can be inquired into under R.R. 4:16-2. See R.R. 4:23-9. Plaintiff could have applied for an order requiring defendant to produce the missing wire. R.R. 4:24-1. If the defendant had refused and plaintiff could show that defendant had or was in a position to supply the necessary answers or had possession of the wire and was unable to give a satisfactory explanation for its absence, she could have requested the court to impose the sanctions imposed by R.R. 4:27-2. Lang v. Morgan's Home Equipment Corp., 6 N.J. 333 (1951); Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., 39 N.J. Super. 318 (App. Div. 1956). Her complaint is devoid of any merit  the scope of discovery is most liberal and its provisions are available for the use of litigants to cause the disclosure of facts relevant to the issues to be tried. R.R. 4:16 to R.R. 4:28, both inclusive. But it is for the party to use the discovery procedures available before complaining that the other party has not revealed relevant information.
Although on this appeal plaintiff raises several objections concerning the charge, we note that in only one instance  that defendant need not insulate its electric wires  was objection made as required by R.R. 4:52-1. That rule expressly provides that no party may urge as error any portion of the charge or omission therefrom unless objection is made and the grounds stated before the jury retires. J.B. Wolfe, Inc., v. Salkind, 3 N.J. 312, 316 (1949); Lertch v. McLean, 18 N.J. 68, 73 (1955); Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 318 (1956). The latter rule is subject, however, to the plain error provisions of R.R. 1:5-3 (c). We recognize that the issues tried were complex, the trial lengthy and the evidence quite involved  which might well have contributed to the probability of error. But even trial errors to which objection is taken will not result in a new trial unless "a denial of the *393 relief sought" would be "inconsistent with substantial justice." R.R. 1:5-3(b) and R.R. 4:63-1. In re Stern, 11 N.J. 584 (1953); Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 308 (1954); Hansson v. Catalytic Construction Co., 43 N.J. Super. 23, 28 (App. Div. 1956).
The instant appeal does not necessitate inquiry into the differences between trial errors which will result in reversal under R.R. 1:5-3(b) and (c), respectively, as we consider the charge given to constitute in several respects "plain error" under R.R. 1:5-3(c).
The crucial issue in the present litigation is the correctness of the trial court's instructions as to the standard of care by which the jury was to judge defendant's actions. We have concluded that the several points raised which relate to the standard of care and to the conduct of decedent, although not in the main objected to, are saved for review by the plain error rule, R.R. 1:5-3(c), and in the interests of substantial justice these will be considered on their merits. Stanley Co. of America v. Hercules Powder Co., supra (16 N.J. at page 308); Ford v. Reichert, 23 N.J. 429, 434-435 (1957); Maccia v. Tynes, 39 N.J. Super. 1, 6 (App. Div. 1956); Valls v. Paramus Bathing Beach, Inc., 46 N.J. Super. 353, 358 (App. Div. 1957).
We deal first with the objection to the charge in respect to industry custom. In this respect, the court charged the following:
"I further charge you, upon request, the following: Was there any proof in this case that the wires of the defendant, Public Service Electric and Gas Company, were not maintained in accordance with standard and recognized practices followed in the electrical industry? If there was no such proof then as to maintenance thereof, there has been no proof of negligence in that respect.

* * * * * * * *
I charge you that there has been no proof in this case that the wires of the defendant, Public Service Electric and Gas Company, were not installed in accordance with standard and recognized practices followed in the electric industry."
It is true that there was no proof of sub-standard original installation or of sub-standard maintenance, but plaintiff *394 urges that nevertheless it does not follow that there was no proof of negligence  that the duty of defendant was not limited by a standard of industry, but, depending on circumstances, its conduct may amount to a violation of its duty of operating with safety.
It is apparent that the quoted portions of the charge limited the jury's consideration of defendant's conduct solely to and in accordance with what would be industry standard and practices. The charge in this respect was erroneous. The general custom of the industry, although evidential as to what is the reasonable standard in an industry, does not conclusively establish the care a public utility must exercise in performance of its operations. Adherence to an industry standard is not necessarily conclusive as to the issue of negligence and does not of itself absolve the defendant from liability. 2 Harper and James, Law of Torts, § 17.3, pp. 978-979 (1956); Prosser, Torts, § 32, p. 135 (2d ed. 1955); Annotation, 55 A.L.R.2d 129 (1957). The defendant must still use reasonable care under all the circumstances and if the prevailing practices in the industry do not comport to that standard, the defendant may be found negligent notwithstanding compliance with industry custom. Adams v. Atlantic City Electric Co., 120 N.J.L. 357, 368-370 (E. & A. 1938); Barnett v. Atlantic City Electric Co., 87 N.J.L. 29, 33 (Sup. Ct. 1915).
Although at one point the trial judge correctly defined the general rule of standard of care in relation to industry custom, in accordance with the Adams case, supra, as epitomized above, nevertheless in our opinion this not only failed to eradicate the error but was so inconsistent in its approach to the issue of negligence with the portion of the charge quoted above that it thereby undoubtedly confused the jury so as to deny the plaintiff the right to have the question fully and fairly considered.
The jury was further instructed that the defendant had "no common law or statutory duty * * * to cover its electric wires so as to prevent the electricity from oozing out therefrom when they came in contact with either animate *395 or inanimate objects." This portion of the charge was objected to. It is apparent that the quoted portion of the instruction was too broad. It could have given the jury the impression that defendant was, as a matter of law, relieved of any duty to insulate dangerous wires by covering them with non-conductive material. Defendant's expert characterized as "insulation" the fact that the charged wire was separated from its ground wire by 12 inches, although he admitted that in a hurricane it would be probable that the two wires would swing toward each other and make contact. He further stated that the wires had a treated cotton fiber covering to protect them against weather but this covering would not prevent transmission of the electric current on contact. While this portion of the charge in and of itself may not have been prejudicial, yet coupled with the court's erroneous charge on "industry standard," it effectively precluded the jury's consideration of plaintiff's principal theory of liability  the absence of due care either in the installation of the wires or in their maintenance in permitting uncovered electric wires to be strung through trees  and hence, in our judgment, constituted plain error requiring reversal.
Although there must be reversal for the reasons above stated, certain other matters of asserted error may recur at the new trial and we therefore deal with them.
Plaintiff argues that she was restricted in offering proof of the standard of care to the standard of practice existing as of the time the wires were originally installed (1915) and that thereby her expert, who admittedly had no knowledge of such standards, was unduly limited. However, an examination of the record shows that plaintiff was not actually precluded in the offer of her proof. Her expert did eventually testify that in his opinion it was unsafe to run power wires through trees, and that if it had to be done, the wires should be insulated, or the trees trimmed away from the wires. He also testified that wires might be placed underground. Despite the absence of proof by plaintiff of the standard of installation in 1915 or any violation thereof by defendant, plaintiff did, as noted, adduce *396 proof tending to indicate that it was negligent to run uninsulated live wires through trees. Consequently, there was no prejudice in this respect in the court's ruling.
It is further argued that the court's charge on the issue of defendant's duty to interrupt the flow of current was prejudicial. The court correctly charged that the defendant's duty, after knowledge of the fallen wire, was to refrain without "unreasonable delay" from transmitting electric current. Adams v. Atlantic City Electric Co., supra; Robbins v. Thies, 117 N.J.L. 389, 394 (E. & A. 1936). However, the trial judge repeated and said "  and I emphasize again `without unreasonable delay'" which the plaintiff urges was "grossly prejudicial," misleading, and obscured the effect of the charge. The added emphasis by the judge was unnecessary but the plaintiff fails to point out facts to show in what manner she was prejudiced thereby.
It is next argued that the court failed to charge the jury that it should consider whether the fall of the television antenna was a foreseeable intervening force as part of its duty of due care. We note that in direct contradiction to this contention the jury was unqualifiedly instructed that it could return a verdict for plaintiff if it found that defendant's negligence contributed to the injury, even though the antenna fell upon the wires and caused them to burn and break.
It is well settled that the defendant is not relieved from liability where there is proof of its negligence, combined with some independent but foreseeable intervening cause which occasions the harm. Martin v. Bengue, Inc., 25 N.J. 359, 371 (1957); Spires v. Middlesex, etc., Elec. Light, Heat & Power Co., 70 N.J.L. 355 (Sup. Ct. 1904); Ferro v. Atlantic City Electric Co., 103 N.J.L. 639 (E. & A. 1927); Prosser, Torts (2d ed. 1955), § 49, p. 266; 2 Restatement, Torts, § 302(b), comment (c), p. 816.
Plaintiff further alleges error in that there was no instruction regarding defendant's duty of due care to install a protective device around the wire to guard against the fall of the antenna as a foreseeable risk. By analogy *397 the rule of due care and foreseeability as applied to electric wires recognizes liability based on falling trees. Spires v. Middlesex, etc., Elec. Light, Heat & Power Co., supra; Clark v. Public Service Electric Co., 86 N.J.L. 144 (E. & A. 1914); cf. Robbins v. Thies, supra; Ferro v. Atlantic City Electric Co., supra. However, the trial admittedly did not proceed on this theory of negligence, which plaintiff now asserts. There was no evidence offered by the plaintiff as to the advisability or necessity for guard wires nor was there any request made for such a charge. Plaintiff is precluded from now raising this issue for the first time. Cf. Gebhardt v. Public Service Coord. Transport., 48 N.J. Super. 173, 182 (App. Div. 1957). If it is to be relied upon on the retrial, the new pretrial order must specify the issue.
The last point argued claims that the plaintiff was prejudiced when the jury was charged to find for the defendant if decedent "deliberately took hold of the wire, either to show that he was not afraid of it, or for some other reason, his conduct was negligent." (Emphasis added)
The general rule is that where one who knows, or in the exercise of ordinary care should know, the dangerous character of an electrified wire, intentionally comes in direct bodily contact with that wire, he is guilty of contributory negligence as a matter of law. Anderson v. Jersey City Elec Light Co., 63 N.J.L. 387 (Sup. Ct. 1899), affirmed 64 N.J.L. 664 (E. & A. 1900); Brooks v. Consolidated Gas Co., 70 N.J.L. 211, 215 (E. & A. 1903); Annotation, 34 A.L.R.2d 126 (1954).
There was evidence that the wire in the instant case was not visibly dangerous  as it was not giving off any sparks of electricity, "it was just a wire hanging down," and appeared to be insulated. Decedent may not have known it was a charged wire. There was conflicting evidence as to whether decedent, 30 years of age at the time of the accident and employed by the Department of Parks of Jersey City as a shade tree foreman, presumably having some knowledge of the danger of electric wires, knew of the deadly nature of the wires. At any rate, the question of contributory negligence *398 was properly presented to the jury. Ferro v. Atlantic City Electric Co., supra; Spires v. Middlesex, etc., Elec. Light, Heat & Power Co., supra; Brooks v. Consolidated Gas Co., supra; Annotation, 34 A.L.R.2d 98 (1954). Although we consider that portion of the charge noted above, "or for some other reason," as perhaps being inclusive of situations which would not necessarily reflect contributory negligence on the part of the decedent, it nevertheless is unnecessary to consider whether such error was prejudicial in view of our determination of the other questions presented.
Reversed and remanded for a new trial.