53 N.J. Super. 19 (1958)
146 A.2d 483
VIOLA SHAFER, PLAINTIFF-APPELLANT,
v.
H.B. THOMAS CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1958.
Decided December 8, 1958.
*21 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. William H. Burns, Jr., argued the cause for plaintiff-appellant (Messrs. Karkus, Kantor & Burns, attorneys).
Mr. E. Donald Steinbrugge argued the cause for defendant-respondent (Mr. John W. Taylor, attorney).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is from a judgment entered in favor of defendant on a jury's verdict of no cause of action.
Plaintiff, a 74-year-old woman, brought suit for personal injuries sustained while entering defendant's store to make a purchase, charging negligent maintenance and construction of certain swinging doors. She testified that on March 25, 1957 she entered the store by pushing inward the right-hand door of a set of two heavy double action 180° swinging doors, and that after she entered, she was *22 struck in the back and thrown to the floor by the left-hand door, which had been pushed inward by someone. The doors were installed in 1943 without stops or checks.
Plaintiff's expert testified that the doors were substandard construction, and dangerous, in 1943 as well as at the time of the accident, due to defendant's failure to equip them with checks or stops. Defendant's only witness was an expert who testified that the doors conformed to standards of construction in 1943, but he admitted that during the last five to seven years, door checks had become standard.
In its charge the trial court, in effect, instructed the jury that if the jury found the doors had been installed in 1943 in accordance with construction standards then existing, there was no duty on the part of defendant to do anything further at that time or in the intervening years, and that negligence in this case could only be based on a deviation from 1943 construction standards. Objection was made by plaintiff on the ground that, even if the doors met 1943 standards, if they were dangerous it was defendant's obligation to alter them, even if that meant complying with later standards, and if stops or checks should have been installed after 1943, it was defendant's obligation to do so. For the reasons hereafter discussed, we hold that the objection was proper and the trial court committed reversible error in its charge.
The rule applicable to such visitors as plaintiff is that one who invites persons to come upon his premises to purchase goods is under a duty to exercise ordinary care to render the premises reasonably safe for such a purpose. The proprietor of a store is not an insurer but he is liable for defects of which he knows or defects which have existed for so long a time that, by the exercise of reasonable care, he had both an opportunity to discover and to remedy. Nelson v. Great Atlantic & Pacific Tea Co., 48 N.J. Super. 300, 305 (App. Div. 1958); Restatement, Torts, N.J. Annotation, § 343 (1940).
Conformance with standards of construction or custom of itself is never conclusive as to the absence of negligence; *23 it is, at most, merely evidential. The overwhelming weight of authority has adopted the compelling logic of Justice Holmes' statement in Texas & P.R. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905, 906 (1903) that "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." The same reasoning is very aptly stated by Judge Learned Hand in The T.J. Hooper, 60 F.2d 737, 740 (2nd Cir. 1932):
"* * * Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their violation."
In Prosser on Torts (2nd ed. 1955) the rule is succinctly set forth (at page 136):
"* * * Even an entire industry, by adopting careless methods to save time and effort or money, cannot be permitted to set its own uncontrolled standard. And if the only test is to be what has been done before, no industry will have any great incentive to make progress in the direction of safety. Much the better view is that of the great majority of the cases, that every custom must meet the challenge of `learned reason,' and can have only the evidentiary weight which its nature deserves; and that where common knowledge will recognize unreasonable danger, what everyone does may be found to be negligence."
See also 2 Harper & James, 977-978 (1956); 65 C.J.S. Negligence § 16, p. 404.
Turning to the New Jersey authorities on the question of whether or not conformance with industry standards or customs is conclusive on the matter of negligence, we note the two cases of Buccafusco v. Public Service Elec. & Gas Co., 49 N.J. Super. 385, 394 (App. Div. 1958); certification denied 27 N.J. 74 (1958), and Adams v. Atlantic City Electric Co., 120 N.J.L. 357, 363 (E. & A. 1938), wherein the courts clearly held that such adherence is not necessarily conclusive. But see Rakowski v. Raybestos-Manhattan, Inc., *24 5 N.J. Super. 203 (App. Div. 1949), certification denied 3 N.J. 502 (1950); Feil v. West Jersey & Seashore R. Co., 77 N.J.L. 502, 503-504 (E. & A. 1909); and Traphagen v. Erie R. Co., 73 N.J.L. 759, 761 (E. & A. 1906). Compare Canonico v. Celanese Corp. of America, 11 N.J. Super. 445 (App. Div. 1951), certification denied 7 N.J. 77 (1951). Defendant argues that the Buccafusco and Adams cases set up a special rule for public utilities. We disagree. In Buccafusco Judge Freund said (49 N.J. Super. at page 394):
"It is apparent that the quoted portions of the charge limited the jury's consideration of defendant's conduct solely to and in accordance with what would be industry standard and practices. The charge in this respect was erroneous. The general custom of the industry, although evidential as to what is the reasonable standard in an industry, does not conclusively establish the care a public utility must exercise in performance of its operations. Adherence to an industry standard is not necessarily conclusive as to the issue of negligence and does not of itself absolve the defendant from liability. 2 Harper and James, Law of Torts, § 17.3, pp. 978-979 (1956); Prosser, Torts, § 32, p. 135 (2d ed. 1955); Annotation, 55 A.L.R.2d 129 (1957). The defendant must still use reasonable care under all the circumstances and if the prevailing practices in the industry do not comport to that standard, the defendant may be found negligent notwithstanding compliance with industry custom. Adams v. Atlantic City Electric Co., 120 N.J.L. 357, 368-370 (E. & A. 1938); Barnett v. Atlantic City Electric Co., 87 N.J.L. 29, 33 (Sup. Ct. 1915)." (Emphasis added)
Reference to the cited authorities, i.e., Harper & James, Prosser and A.L.R., manifestly indicates that the rule is not to be limited to public utilities.
If defendant's swinging doors were dangerous and violative of the duty owed by a store proprietor to its invitee, then it would not matter if every department store in the State had them. Defendant would be guilty of negligence. It necessarily follows that even if the doors were standard construction in 1943 and yet dangerous, their continued maintenance in that dangerous form would be negligence.
It is important to note, though it is not necessarily applicable to the instant case, that situations may arise where the condition involved is so obviously dangerous and unsafe that proof of conformance to a standard is not only not conclusive as to due care but it may not even be any evidence *25 of the absence of negligence. "At most it is helpful rather than conclusive * * *. But sometimes evidence of conformity should not be, and is not, admissible. A business usage may be so hazardous that the negligence of those who follow it is patent. Then proof of usage is a waste of time." Morris, "Custom and Negligence," 42 Col. L. Rev. 1147, 1149 (1942). The author of that illuminating article continued as follows (at page 1150):
"For example, in Mayhew v. Sullivan Mining Co. [76 Me. 100, 112 (1884)] the defendant cut a ladder hole in a platform in a dark mine. He knew the plaintiff would use the platform but did not guard the hole or warn the plaintiff. The plaintiff fell through, dropped 35 feet, and was seriously injured. The trial court rejected the defendant's offer to prove that such openings were customarily unguarded. Barrows, J. found no error, saying, `If the defendants had proved that in every mining establishment that has existed since the days of Tubal-Cain it has been the practice to cut ladder-holes in their platforms * * * without guarding or lighting them, and without notice to contractors or workmen, it would have no tendency to show that the act was consistent with ordinary prudence * * *. The gross carelessness of the act appears conclusively upon its recital.' So evidence of conformity may be worthless. That a judgment adverse to the defendant might produce a change in all mining operations is no reason for relieving the defendant of liability when usage is unreasonably dangerous. When a custom is outrageously hazardous, greater precautions are practical. Obvious inadequacy of a practice may cancel consideration ordinarily shown to a defendant who follows the example of his craft. The exclusion of the proffered evidence is tantamount to a ruling that the custom is negligent as a matter of law."
See also, "Admissibility, upon issue of negligence, of evidence of custom or practice of others," 137 A.L.R. 611, 615, note 20.
Plaintiff further claims reversible error based upon the trial court's charge concerning certain remarks made by defendant's counsel in his opening and summation. On those occasions defendant's counsel stated that defendant, even though it denied liability, had made an offer to plaintiff to "pay her medical expenses, plus a little bit more." Plaintiff's counsel objected to the remarks on the opening but, after the court indicated that defendant's counsel had a right to make the statement, he withdrew the objection. On summation, counsel for both plaintiff and defendant *26 referred to the quoted offer. Defendant's counsel, on oral argument, conceded he made the references to gain the jury's sympathy.
In its charge the trial court directed the jury not to consider the statement of the offer as an admission of liability. Plaintiff objected, contending that defendant's statement "was a calculated risk, and I think the jury should be permitted to make what they will of such offer and to draw what inferences they feel may reasonably be drawn from counsel's statement * * *." Plaintiff argues that the reference to the offer by defendant and the rulings and instructions of the trial court created an aura of prejudice denying plaintiff a fair trial, citing Haid v. Loderstedt, 45 N.J. Super. 547 (App. Div. 1957).
The opening statement is intended generally to inform the jurors concerning the nature of the action, the issues and the questions of fact involved so that the jurors' minds will be better prepared to understand the testimony. Farkas v. Board of Chosen Freeholders of County of Middlesex, 49 N.J. Super. 363, 367-368 (App. Div. 1958); 53 Am. Jur., Trial, § 454, page 357. But no statement should be made in the opening which counsel neither intends to prove or cannot prove. State v. Erwin, 101 Utah 365, 120 P.2d 285, 313 (1941); 29 Words and Phrases, Opening Statement, p. 528.
Defendant's counsel admits he intended to submit no proof with reference to this statement. There is no justification for counsel to make such a statement. We deem such remarks to be improper. After the statement was made, the trial court should have declared a mistrial or should have strongly guarded the jury "against the pernicious results through proper instruction * * *." Patterson v. Surpless, 107 N.J.L. 305, 308 (E. & A. 1930). Generally, we note in 53 Am. Jur., Trial, § 457, page 359, that "counsel in referring to matters [in his opening] which he subsequently does not attempt to prove may be guilty of inexcusable conduct prejudicial to the opposing side * * *."
Reversed with costs.