70 N.J. Super. 221 (1961)
175 A.2d 477
PETER J. VENUTO, PLAINTIFF-APPELLANT,
v.
LUBIK OLDSMOBILE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 26, 1961.
*222 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Samuel L. Shapiro argued the cause for plaintiff-appellant (Messrs. Reuss & Magazzu, attorneys; Messrs. Shapiro, Brotman & Eisenstat, of counsel).
*223 Mr. Samuel P. Orlando argued the cause for defendant-respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiff, a business invitee of defendant, sought damages for personal injuries sustained on October 24, 1958, when he walked into and shattered a large panel of clear plate glass, one quarter of an inch in thickness, which formed part of one of the "interior and exterior walls" of a showroom of defendant Lubik Oldsmobile, Inc. (Lubik), in Bordentown. Plaintiff had entered defendant's showroom to make inquiry concerning the purchase of a new car. Plaintiff contended that the transparency of the glass panel with no "railing" or "markings" thereon, created a hazardous condition, its danger heightened by the fact that the same type of artificial fluorescent lighting used in the ceiling of the showroom was installed in the ceiling of a roof which extended over an outside, adjacent "bay." Plaintiff, in the act of leaving the showroom, failed to note the existence of a glass door located in the southeast corner of the showroom (opening on the roofed "bay" and intended for entrance and exit to and from the showroom) and crashed into the adjacent glass wall, the presence of which he did not observe. The parties agree that the weather was clear on the day of the accident.
In his amended complaint in the Superior Court, Law Division, as amplified in the pretrial order, plaintiff asserted a right to recover damages against State Motors Company (Motors), owner of the land on which the building was erected, and against Lubik, the tenant which had designed and constructed the building with Motors' approval. In support of his right of recovery he asserted (a) that his injuries were caused by reason of the fact that the "showroom building and in particular the glass door and window panels" were not erected in accordance with the "accepted standard of construction" and that the resultant structure, combined with "improper lighting," constituted a "nuisance *224 and hazard"; and (b) that his injuries were caused by the fact that defendants "so negligently constructed" and "maintained" the building in the particulars aforesaid that "the presence of window panel was indistinguishable" and the "window" which he struck was "indistinguishable" from the door.
Plaintiff's suit resulted in a judgment in favor of both defendants entered on a jury verdict of no cause for action. No appeal is taken from the judgment in favor of Motors and plaintiff has now on appeal abandoned the count charging nuisance.
In seeking to reverse the aforesaid judgment in favor of Lubik plaintiff asserts: (1) error in the court's action in striking certain testimony given by plaintiff, quoting a statement alleged to have been made by the president of Lubik and which, plaintiff contended, constituted a relevant admission "against" defendant's "interest"; (2) error in the court's admission of an exhibit, received in evidence under the circumstances hereinafter set forth; and (3) numerous errors in the court's charge to the jury.
The record before us reveals the following. The building occupied by defendant's showroom was described by plaintiff's architectural expert as follows:
"The building consists of two principal units, the show room in the front along Route 130 and the service facilities to the rear. It consists of five bays in length, four of which are enclosed in glass on three sides, and the rear service portion is masonry. The rear portion has a flat roof on it and the showroom has a pitched roof running from high in front to meet the other roof in the rear. The fifth bay is access to the service station or service room in the rear, and that's on the south side. The showroom is all glass with a terrazzo floor, lighted with fluorescent lights in the ceiling, strips, built up roof."
Entrance and exit to and from the showroom, the architect explained, might be made through double glass doors at the front thereof on the west or highway side or by a glass door which opened on the aforesaid bay on the south side.
*225 Continuing his description of the showroom, plaintiff's witness testified that the southeast door was "about three feet wide and seven feet high" and that the glass panel "immediately adjacent" to and west of the door (which panel plaintiff struck) "was approximately four feet wide and eight feet * * * high," that its top varied by reason of the roof's "slope" from "the low side at the service facility * * * up to a high point at the highway side." The glass panel was bordered "on the inside with the frame of the door and on the right side a standard mutton, as used in most store front construction, the bottom resting on the adjacent terrazzo floor. The top was similar standard sash construction with the metal moldings, and was parallel with and against the ceiling construction." The next westerly glass panel on the same side was approximately eight feet wide and nine to ten feet high. The witness further said the door in the southeast corner of the showroom was a "stock aluminum door full glazed in a standard store front type of frame running from the floor to the ceiling, the transom above the door." The door was "hinged on the right-hand side swinging in with a small pull on the left-hand side on the inside and a push bar on the exterior of the door." He added that a small red sign was on the inside of the door with the word "pull" on it in white letters and a comparable sign on the door's exterior marked "push." Photographs of the exterior and interior of the building showing the scene of the accident and the glass wall and door on the south side of the building were received in evidence.
Testimony by plaintiff and by Lubik's president, the only witnesses in addition to plaintiff's architect whose testimony is contained in the appendices presented on this appeal, was in substantial agreement as to the circumstances surrounding the accident. The only substantial variance in their testimony was that plaintiff testified that on entering the showroom about 1:00 P.M. on the day in question he had used the front or west doorway, while the president said plaintiff *226 had entered through the aforesaid southeast door. They are in accord that just before the happening of the accident plaintiff examined cars on the showroom floor and then conferred with the president as they sat on a couch a few feet from the south glass well. As the conference ended the two men stood, concluded their conversation, the president turned north toward his office, plaintiff turned south, and, according to his own testimony, "looking straight ahead," took "three or four or five steps" and "collided" with the glass panel located, as above stated, "immediately next" to the door. His only explanation was that he didn't "see the glass." He suffered a severe injury. The first person to reach him was defendant's president. The court's ruling with reference to a remark which plaintiff alleges the president then made to him forms the basis of the first ground urged as aforesaid by plaintiff for reversal of the judgment against him. We initially consider it.
On direct examination, over objection made by defendant's counsel in the presence of the jury, plaintiff testified that "less than a minute" after the accident and as soon as the president reached him, the latter said: "Don't feel badly about it, there was a woman almost busted right through this window a few days ago." Defendant's counsel rested his aforesaid objection on the ground that the alleged statement was "not part of the res gestae, and furthermore, anything that Mr. Lubik may say would not have any legal binding effect on the corporate defendant."
In overruling defendant's objection to the aforesaid testimony the trial court made the following statement:
"I am going to permit it, and if I have to strike it I want to tell the jury the practicalities of striking it. You [the jurors] see, when the court tells you to strike it, you are supposed to remove it from your minds. It's almost an impossibility because it has made some imprint.
I want to say this, if I strike it, you must rise to the occasion to literally remove it from your recollection, so to speak, even though you recall it; it shall not take place, it's closed.
*227 I am going to permit it. There is an exception on the record and I will entertain a motion to strike it if it resolves in the court's mind it's not res gestae. * * *"
Defendant's president later testified that he had no recollection of making "any such statement" as above set forth and specifically denied that there had been "any such experience" as related by plaintiff.
The record reveals that thereafter, when the testimony had been completed and both parties had rested, the jury was excused for the balance of that day and, out of the presence of the jury, defendant's counsel renewed his motion to strike the aforesaid evidence. Plaintiff's counsel, resisting the motion, asserted that the testimony had not been offered as part of the "res gestae" but as "an admission against interest," made by the defendant's president, binding on the corporation, and "showing knowledge on the part of the defendant that there was something of a danger." After argument the court granted defendant's motion, stating: "I will strike that because he was not an agent for that purpose and I find it's not res gestae."
On resumption of the trial the following day, the court made no reference whatever to the fact that the aforesaid testimony had been stricken by it in the jury's absence. Furthermore, despite the court's above quoted prior statement made to the jurors on the admission of the testimony, the court did not at any time thereafter advise the jury that the testimony had been excised from the case. As a consequence the jurors received the case for decision completely unaware of the court's action and the testimony in question, together with all of the other evidence, remained before the jury for assessment.
However, on appeal, plaintiff, completely ignoring the foregoing record, seeks reversal of the judgment on the ground that the trial court's ineffectual action in striking the aforesaid testimony was prejudicially erroneous. He reasserts the competency of the alleged statement by defendant's president on the ground that it "represented an *228 admission against interest." It is clear that plaintiff's contention that "reversible error" was committed by the aforesaid inconclusive action of the court in striking the testimony in question is completely without merit. Manifestly plaintiff may not be heard to assert that the trial court erroneously withdrew testimony from the jury's consideration when the very record he presents for our review shows that no such action occurred. Under these circumstances we find it unnecessary to resolve or even discuss the respective contentions of counsel as to the propriety of the court's original admission of the testimony or the court's abortive action in striking it. No inconsistency with "substantial justice" exists. No "substantial rights" of the plaintiff were "adversely affected." No prejudice is present. R.R. 1:5-3(b), 2:5; Miller v. Trans Oil Co., 18 N.J. 407, 413-414 (1955). Moreover, in view of our hereinafter expressed conviction as to the complete lack of merit in plaintiff's case, the retention or exclusion of the testimony in question is immaterial. Plaintiff's aforesaid challenge of the judgment is rejected.
In advancing the remaining grounds for reversal of the aforesaid judgment, plaintiff, in each instance, asks that we afford him relief on the basis of the plain error rule. R.R. 1:5-3(b), 2:5.
Plaintiff contends that prejudicial error was committed by the trial court in admitting as an exhibit the aforesaid door which, at the time of the accident, was located on the south side of defendant's showroom. Plaintiff asserts that the exhibit "very likely was given undue weight by the jury and unduly excited antipathy to plaintiff's case." In passing, we express the view that the door clearly constituted relevant evidence. Plaintiff's alleged contributory negligence, as well as the claimed negligence of defendant, was at issue. The door was located a few feet from the place where plaintiff collided with the glass wall. If the door's construction were such as to make it readily visible, as defendant claims, its production as an exhibit was proper as the jury reasonably *229 might infer that plaintiff was negligent in not observing it. Of greater importance, however, is the fact that plaintiff consented to the admission of the door as an exhibit. The record discloses the following:
"Mr. Orlando: Your Honor please, at this time I should like the door be offered in evidence and marked as an exhibit on behalf of the defendant, Lubik Oldsmobile.
The Court: Any objection to its offer?
Mr. Magazzu: Your Honor, I have no objection to the admission, but I would prefer to reserve a decision on the question of retaining [sic] at least until the end of the day."
Furthermore, at the end of that particular day's session of the court, the following colloquy occurred:
"The Court: * * * What about the door, gentlemen?
Mr. Orlando: Would you have any objection to the taking of the door?
The Court: I think it ought to be here.
Mr. Magazzu: I would prefer it be here also. I have to inconvenience you.
The Court: All right, we will leave the door here."
Under these circumstances, apart from the relevancy of the door as an exhibit, plaintiff may not invoke the plain error rule. Where an allegedly aggrieved party not only does not object at trial but by his own conduct endorses the action taken, he may not be heard on appeal to label that action as "plain error." Schult v. H. & C. Realty Corp., 53 N.J. Super. 128, 136 (App. Div. 1958), certif. den. 29 N.J. 279 (1959).
We next consider plaintiff's contention that the court's charge was erroneous "in placing undue prominence upon the subject of contributory negligence." Our examination of the charge discloses that the contention is without merit. Moreover, it is to be noted that plaintiff's brief states that the "portion of the Trial Court's charge [dealing with contributory negligence] represented a correct proposition of law."
*230 Plaintiff's final attack on the judgment is based on his contention that, although the trial court charged certain requests as submitted by him, prejudicial error arose from the court's prefatory and supplemental comments to the jury with reference to the content of the requests.
Plaintiff's requests to charge, as submitted by him, dealt respectively with principles of law relating to: (a) the duty owing to an invitee by "the proprietor of a store"; (b) "standards of construction or custom"; (c) the policy justifying the standard to be observed in the care and maintenance of the property to which the general public is invited; and (d) incorporating the following quotation from Buccafusco v. Public Service Electric & Gas Co., 49 N.J. Super. 385, 394 (App. Div.), certif. den. 27 N.J. 74 (1958):
"`The general custom of the industry, although evidential as to what is the reasonable standard' of the `industry, does not conclusively establish the care a public utility must exercise in performance of its operations. Adherence to an industry standard is not necessarily conclusive as to the issue of negligence and does not of itself absolve the defendant from liability.'" (Emphasis supplied)
Passing the fact that it is to be noted that plaintiff included reference, in his last quoted request, to a "public utility" with which we dealt in Buccafusco, supra, and which, of course, had no relationship to the structure here involved, we turn to the trial court's statements to the jury in connection with its charge encompassing plaintiff's aforesaid requests. Immediately preceding its deliverance of plaintiff's requests as part of its charge to the jury the court said:
"Now I will charge you what the plaintiff, Venuto, through his attorney has asked me to charge you as the general law, and I so charge you that is the general law, except that while this may be academic and may be properly equated matters of law, just because that's the law doesn't of itself give rise to any violation of the law, that you will have to associate the facts to the law as I read it to you."
*231 Immediately following its deliverance of plaintiff's requests to charge, the court made the following further statement to the jury:
"Now, ladies and gentlemen, I charge you that generally this is the law generally. Now, insofar as this case, I am going to give you additional law which you will have to associate the facts and the proof. In other words, it may be the situation in this case, and you will be the judges of that, but in other words, there are various provinces of law and there are various rules of law, but they may be academic law. What we have in cases is not guessing and not hoping and not wishing, but what we have in cases is the sworn testimony that you heard."
Following protest by Motors' attorney that there should be no reference to a "public utility" in a charge dealing with the facts of the case at bar, the court made the following further statement to the jury:
"That was general law and it was correct law. Whether it fits this case or not I didn't say, you will have to determine it, because general laws can only be associated to facts."
The above quoted portions of the court's charge were patently erroneous.
In Hoffman v. Trenton Times, 125 N.J.L. 450, 452 (E. & A. 1940), the court said:
"Generally the office or purpose of instructions by the court is to inform the jury as to the law of the case applicable to the facts in such a manner that the jury may not be misled; in other words, to advise the jury as to what is the law applicable to a certain set of facts, if they find the existence of such facts from the evidence. * * *"
In Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 565 (App. Div. 1951), this court noted that: "The jury should not be left by the court `without "guide or compass. * * *"'"
In Phillips v. Scrimente, 66 N.J. Super. 157, 162 (App. Div. 1961), we said: "It is the obligation of the court to instruct the jury clearly in the rules of law by which the *232 evidence is to be examined and upon which the jury is to determine the issues."
It is clear that the aforesaid criticized portions of the court's charge in the instant case could have no effect other than to confuse and mislead the jury. However, as above stated and hereinafter reiterated, we find no justification for reversing the judgment herein and directing a new trial.
It is noted that the trial court reserved decision, R.R. 4:51-2(a), on a motion by defendant for a judgment of dismissal made at the end of the entire case, R.R. 4:51-1, based, as then stated by defendant's counsel, on (a) plaintiff's failure "to prove any actionable negligence against the defendant" and (b) the contention that plaintiff "was guilty of contributory negligence as a matter of law." In view of the jury verdict in favor of defendant the court did not resolve the motion. We think it might well have been granted when made. Compare, Bowman v. Central R. Co. of N.J., 27 N.J. Super. 370, 373 (App. Div. 1953); George Siegler Co. v. Norton, 8 N.J. 374, 385 (1952).
Justice dictates that this case be resolved on the principle enunciated in VenDerbeek v. Conlon, 41 N.J. Super. 574, 580, 581 (App. Div. 1956), in which we said:
"Assuredly an error in instructions of law as against an unsuccessful plaintiff is not prejudicial where he manifestly fails basically to support his alleged cause of action by the facts. Fannick v. Metropolitan Life Ins. Co., 34 N.J. Super. 556, 562 (App. Div. 1955); Osborne v. Tunis, 25 N.J.L. 633, 649 (E. & A. 1856); Wyckoff v. Runyon, 33 N.J.L. 107, 109 (Sup. Ct. 1868). Cf. Leport v. Todd, 32 N.J.L. 124, 133 (Sup. Ct. 1866).

* * * * * * * *
In the existing state of the evidence in the present action we are not persuaded that the plaintiffs experienced any denial of substantial justice by reason of any of the errors claimed. R.R. 1:5-3(b); 2:5."
See also, Bush v. N.J. and N.Y. Transit Co., Inc., 30 N.J. 345, 352 (1959).
In resolving this appeal we have analyzed the entire transcript of the testimony. (Portions thereof were omitted *233 in the appendices presented.) It is abundantly clear that the proofs failed to show any negligence on the part of defendant. Plaintiff's proofs, in support of his contention that defendant's negligence proximately caused his injuries, were (to adopt the expression used by Judge Jayne in VanDerbeek, supra, 41 N.J. Super., at p. 578) "at most microscopic." It is equally apparent that plaintiff's own negligence proximately caused the accident on which he bases his claim for damages.
Extended direct and cross-examination of plaintiff's expert, who examined defendant's showroom on November 30, 1959, developed that he considered the building to be "in conformance with accepted standards of construction" but, after attempting to testify as to what he might have advised had he been the architect, voiced the opinion that a "hazard" existed. He said that he entertained this opinion because on the aforesaid glass panels "there is nothing here to warn people against the glass through which they can walk." He added that there were "several ways this could be accomplished, has been in many instances, by the cutting or sand-blasting a narrow stripe or stripes across the glass, by the use of a small rail * * * or by painted stripes * * *."
The expert admitted on cross-examination that he personally had no difficulty on his tour of inspection of the building of noting the presence of the glass door and handle thereon at a distance of five feet, and that the place where the "pinkish terrazzo" floor ended was where it was intersected by the perpendicular glass walls. He answered affirmatively the inquiry whether one "looking at the floor" would have "no trouble" discerning the line of demarcation between the wall and the floor surface. His precise viewpoint was expressed in the following interrogation on cross-examination:
"Q. Then as I understand, your testimony, Mr. Fridy, is that generally speaking the construction here is all right as far as frames, glass, excepting you think in some places you think the glass should have been not as wide? A. That's correct.
*234 Q. But that wasn't south at the door and the panel next to the door? A. No, the door is conventional and the panel next to it is about a foot wider than the door.
Q. And you find no fault with that? A. No except if I were to do it I might do it a little differently.
Q. But you are not critical of that if somebody else entertained a different view. Is that right? A. That's correct.
Q. What you are saying then had you been the architect on this job, particularly having the knowledge of the facts as you do in this case, you would have suggested that something be painted or something be done with the glass? A. Yes, sir.
Q. So as to alert someone walking toward it of the presence of the glass? A. Yes.
Q. Does the bar on that door do that very thing? A. It does it as far as the door goes, but I think that's a small portion of the room as a whole and the door is probably less subject to breakage than any of the panels in the show room.

* * * * * * * *
Q. So you had no difficulty in ascertaining where the door was, you had no difficulty in seeing the sign that was marked pull, you had no difficulty in seeing the pull, the door pull, and of course the crossbar on the door. Is that correct? A. That's right."
The proofs reveal no reasonable basis upon which a verdict in favor of plaintiff would have been justified.
The judgment of the Law Division in favor of defendant is affirmed.